WEST OTTAWA PUBLIC SCHOOLS v DIRECTOR, DEPARTMENT
OF LABOR

Docket Nos. 50987, 51147. Submitted February 3, 1981, at Grand
Rapids.—Decided June 16, 1981. Leave to appeal applied for.

Plaintiffs in this action, West Ottawa Public Schools, Grandville
Public Schools, Wyoming Public Schools, Harold Branderhorst,
Neal Johnson and Douglas Rossien, filed an action in Ottawa
Circuit Court challenging the constitutionality of Michigan's
prevailing wage statute and the application of the statute, if ·
constitutional, to construction projects financed solely by public
funds without the use of any state money. The defendants are
C. Patrick Babcock, Director, Department of Labor, the Depart-
ment of Labor and the State of Michigan. The ·plaintiff school
districts were either building or planning new school facilities
to enable them to properly carry out their educational responsi-
bilities. The Grandville project is the only one of the three
involving use of state funds. The prevailing wage law requires
that every contract for a covered public construction project
which is sponsored or financed in whole or in part by the state
must contain a requirement that wages and fringe benefits for
workers on the project shall not be less than the wage and
fringe benefit rates prevailing in the locality in which the work
is to be performed. The wages and fringe benefits contained in
union contracts are the sole source of prevailing rates for any
public construction project, thus, regardless of the wages actu-
ally being paid in the construction labor market in a given
locality, only union rates can be adopted as prevailing rates for
that area. Plaintiffs contend that, because the Department of
Labor is statutorily required to set the prevailing wage rate at

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 1 Am Jur 2d, Administrative Law § 93.
    16 Am Jur 2d (Rev), Constitutional Law § 335 *et seq.*
[3, 4] 65 Am Jur 2d, Public Works and Contracts §§ 212, 213, 216, 218.
    Validity of statute, ordinance, or charter provision requiring that
    workmen on public works be paid the prevailing or current rate
    of wages. 18 ALR3d 944.
[5] 38 Am Jur 2d, Guaranty § 1.
[6] 64 Am Jur 2d, Public Securities and Obligations §§ 120-122.

union rate, the Legislature has unconstitutionally delegated its power to a private party. Plaintiffs further assert that the prevailing wage law is not applicable to the West Ottawa and Wyoming projects since no state funds are involved. The Michigan State Building and Construction Trades Council, ALF-CIO, was permitted to intervene in the action as a defendant. The trial court granted a preliminary injunction against enforcement of the statute pending the outcome of the action. The court also ruled that the prevailing wage law is unconstitutional but that, had the law not been unconstitutional, it would have applied to the West Ottawa and Wyoming projects also since the state's qualification of their bond issues placed the state in the position of a "sponsor" within the meaning of the law, James E. Townsend, J. On agreement of the parties, the preliminary injunction was made permanent. The defendants now appeal. *Held:*

1. The prevailing wage law contains no delegation of legislative, policy-making authority to the Department of Labor. The determination of the prevailing wage does not amount to the setting of state policy but, rather, merely authorizes the Department to implement what the Legislature had already declared to be the law in Michigan. Nor has the power to set the prevailing wage rate for public contracts been conferred on unions or contractor-employers. The statute merely adopts, as the critical standard to be used in determining prevailing wage, the wage rate arrived at through a collective bargaining process completely unrelated to and independent of the prevailing wage statute. Although the wisdom of the legislation may be questioned, the statute does not unconstitutionally delegate the legislative function to a private party.

2. The state acts as a surety for the payment of qualified bonds when they are due; therefore, the state is in the position of a sponsor of any construction projects funded by such bonds and the prevailing wage law applies even though no state money is directly involved in the project. The trial court properly decided this issue.

Affirmed in part, reversed in part. The permanent injunction is dissolved.

1. CONSTITUTIONAL LAW — LEGISLATIVE POWER.

The Michigan Constitution prohibits the delegation of legislative power (Const 1963, art 4, § 1).

2. CONSTITUTIONAL LAW — DELEGATION OF POWERS.

The Legislature may not abdicate its lawmaking powers; how-

ever, a subordinate body or official may be delegated the power to apply the laws provided that the statutory standards prescribed for guidance of the body or official to which the power is delegated are as reasonably precise as the subject matter requires or permits.

3. STATE — CONSTRUCTION CONTRACTS — PREVAILING WAGE — STATUTES.

The prevailing wage must be paid to construction workers on state projects sponsored or financed in whole or in part by the state unless the workers are civil service employees; the prevailing wage is the equivalent of the union wage for like work in the same or a similar locality (MCL 408.551 *et seq.;* MSA 17.256[1] *et seq.).*

4. STATE — DEPARTMENT OF LABOR — PREVAILING WAGE — STATUTES.

The Department of Labor is precluded, in determining prevailing wage, from consideration of collective agreements or understandings which are controlled in any way by either an employee or employer organization (MCL 408.554; MSA 17.256[4]).

5. WORDS AND PHRASES — SPONSOR.

A sponsor is one who binds himself to answer for another's default or assumes responsibility for some other person or thing.

6. STATE — SCHOOL BONDS — STATUTES.

The state acts as a surety for the payment of a school district's qualified bonds when they are due and whenever a school district is unable to pay the principal and interest on its qualified bonds the state must loan it an amount sufficient to enable it to make the payment (MCL 388.958; MSA 3.424[118]).

*Miller, Johnson, Snell & Cummiskey* (by *Jon G. March* and *Charles C. Hawk),* for plaintiffs.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Gerald F. Young* and *Paul J. Zimmer,* Assistants Attorney General, for C. Patrick Babcock, Director of Department of Labor, the Department of Labor, and the State of Michigan.

*Donald J. Prebenda* and *Paul Jacobs,* for the

Michigan State Building and Construction Trades Council, AFL-CIO.

Before: D. F. WALSH, P.J., and R. B. BURNS and D. E. HOLBROOK, JR., JJ.

D. F. WALSH, P.J. Defendants appeal from a declaratory judgment and permanent injunction precluding enforcement of Michigan's prevailing wage law[1] on the ground that the statute constitutes an unlawful delegation of legislative power. Plaintiffs cross-appeal the trial court's ruling that the statute applied to West Ottawa and Wyoming Public Schools.

In early 1979, the Board of the Grandville Public Schools invited bids from contractors on a proposed transportation-maintenance facility. The board requested bids both with and without a prevailing wage requirement.[2] After accepting the lowest bid, the board placed the difference between the accepted bid and the prevailing-wage-rate bid into an escrow account to ensure payment according to the statute if subsequently required. Construction began in August, 1979, and the state paid $31,000 of the building cost.

In the fall of 1979, the West Ottawa and Wyoming Public Schools were involved in the planning stages of construction projects to upgrade their present facilities. Both schools intended to finance this construction through municipal bonds. Wyoming's bonds had already been approved and qualified by the State of Michigan in accordance with MCL 388.951 et seq.; MSA 3.424(111) et seq. Both schools also concurred in the prospective use of the Grandville Public Schools bidding procedure.

[1] MCL 408.551 et seq.; MSA 17.256(1) et seq.
[2] MCL 408.552; MSA 17.256(2).

On August 14, 1979, plaintiffs filed a complaint against defendants seeking declaratory and injunctive relief. Plaintiffs claimed that the Michigan prevailing wage law was unconstitutional because its method for determining the prevailing wage rate unlawfully delegated legislative power to private individuals and violated plaintiffs' due process and equal protection rights. Plaintiffs further asserted that the prevailing wage law was not applicable to West Ottawa and Wyoming Public Schools since the construction would not be financed by state funds.

On October 11, 1979, the Michigan State Building and Construction Trades Council was permitted to intervene in the suit. A hearing on plaintiffs' motion for a preliminary injunction was held on the same day.

In an opinion rendered on February 11, 1980, the trial court granted the preliminary injunction. The court ruled that the statute was unconstitutional as an unlawful delegation of legislative power because it mandated that the Department of Labor adopt a union wage rate as the prevailing wage in the locality without independent evaluation as to the propriety of the rate. The court also decided that the statute would have been applicable to the West Ottawa and Wyoming Public Schools since the state's qualification of their bond issues placed the state in the position of a "sponsor" within the meaning of the law. This decision is the subject of the present appeal.

The relevant portions of the prevailing wage law at issue read as follows:

"Sec. 2. Every contract executed between a contracting agent and a successful bidder as contractor and entered into pursuant to advertisement and invitation to bid for a state project which requires or involves the

employment of construction mechanics, other than those subject to the jurisdiction of the state civil service commission, and which is sponsored or financed in whole or in part by the state shall contain an express term that the rates of wages and fringe benefits to be paid to each class of mechanics by the bidder and all of his subcontractors, shall be not less than the wage and fringe benefit rates prevailing in the locality in which the work is to be performed.

\* \* \*

"Sec. 4. The commissioner [Department of Labor] shall establish prevailing wages and fringe benefits at the same rate that prevails on projects of a similar character in the locality under collective agreements or understandings between bona fide organizations of construction mechanics and their employers. Such agreements and understandings, to meet the requirements of this section, shall not be controlled in any way by either an employee or employer organization. If the prevailing rates of wages and fringe benefits cannot reasonably and fairly be applied in any locality because no such agreements or understandings exist, the commissioner [Department of Labor] shall determine the rates and fringe benefits for the same or most similar employment in the nearest and most similar neighboring locality in which such agreements or understandings do exist. The commissioner [Department of Labor] may hold public hearings in the locality in which the work is to be performed to determine the prevailing wage and fringe benefit rates." MCL 408.552, 408.554; MSA 17.256(2), 17.256(4).

Plaintiffs argue that, because the Department of Labor is statutorily required to set the prevailing wage rate at union rate, the Legislature has unconstitutionally delegated its power to a private party. We cannot agree.

Article 4, § 1, of the Michigan Constitution prohibits the delegation of "legislative power".[3] The

[3] "The legislative power of the State of Michigan is vested in a senate and a house of representatives." Const 1963, art 4, § 1.

Michigan doctrine of nondelegation has been expressed in terms of a "standards" test:

" 'There is no doubt that a legislative body may not delegate to another its lawmaking powers. It must promulgate, not abdicate. This is not to say, however, that a subordinate body or official may not be clothed with the authority to say when the law shall operate, or as to whom, or upon what occasion, *provided, however, that the standards prescribed for guidance are as reasonably precise as the subject matter requires or permits.'* (Emphasis supplied.)" *Detroit v Detroit Police Officers Ass'n,* 408 Mich 410, 458; 294 NW2d 68 (1980), quoting *Osius v St Clair Shores,* 344 Mich 693, 698; 75 NW2d 25 (1956).

The preciseness of the standards will vary in proportion to the degree to which the subject regulated requires constantly changing regulation. *Dep't of Natural Resources v Seaman,* 396 Mich 299, 309; 240 NW2d 206 (1976). As stated by the Court in *G F Redmond & Co v Michigan Securities Comm,* 222 Mich 1, 5; 192 NW 688 (1923):

"The power to carry out a legislative policy enacted into law under the police power may be delegated to an administrative board under quite general language, so long as the exact policy is clearly made apparent, and the administrative board may carry out in its action the policy declared and delegated * * *. This marks the line between arbitrary officiousness and the exercise of delegated power to carry out a designated policy under the police power."

In *Male v Ernest Renda Contracting Co, Inc,* 122 NJ Super 526; 301 A2d 153 (1973), *aff'd* 64 NJ 199; 314 A2d 361 (1974), *cert den* 419 US 839; 95 S Ct 69; 42 L Ed 2d 66 (1974), the court reversed the trial court's finding that the New Jersey prevailing wage act was unconstitutional as an unlawful

delegation of legislative power to a private party. Under the New Jersey act, the Commissioner of Labor established the prevailing wages for state projects from collective bargaining agreements. The Commissioner did not adopt any further rules or regulations but took the collective bargaining agreement that covered the majority of the workers in the locality and used the wages in that agreement as the prevailing rate. In holding that the statute was not unconstitutional, the appellate court reasoned:

"We do not find that the act, or the Commissioner's interpretation thereof, presents a problem of delegation of legislative power. As we view the act, the Commissioner has not been delegated power to perform a legislative function; rather, he has merely been granted the power, as a matter of legislative convenience, to determine a set of facts, *i.e.,* the wage rates established under collective bargaining agreements in given circumstances. The Legislature has determined, for reasons set forth in section 1 of the act (NJSA 34:11-56.25), that the wages paid under collective bargaining agreements negotiated between labor unions representing a majority of the workmen engaged in the trade under collective bargaining agreements and their employers shall be the wages paid in the performance of public work. That public policy determination was for the Legislature. We find no constitutional bar thereto. To conclude, as the trial judge did, that under such a scheme 'the public is not sufficiently protected against arbitrary or self-motivated action on the part * * * of such private party to whom the legislative function has really been delegated,' misses the point and actually constitutes a substitution of judicial judgment for that of the Legislature." *Male v Ernest Renda Contracting Co, supra,* 533-534.

Accord, *Kugler v Yocum,* 69 Cal 2d 371; 71 Cal Rptr 687; 445 P2d 303 (1968), *Union School Dist of Keene v Comm'r of Labor,* 103 NH 512; 176 A2d

332 (1961), *Baughn v Gorrell & Riley,* 311 Ky 537; 224 SW2d 436 (1949), *Metropolitan Water Dist of Southern California v Whitsett,* 215 Cal 400; 10 P2d 751 (1932). *Contra, Industrial Comm v C & D Pipeline, Inc,* 125 Ariz 64; 607 P2d 383 (1980), *Bradley v Casey,* 415 Ill 576; 114 NE2d 681 (1953), *Wagner v Milwaukee,* 177 Wis 410; 188 NW 487 (1922).

While we recognize that there is a split of authority on this issue, we are persuaded that *Male, supra,* presents the better view. The Michigan Legislature has not delegated any legislative, policy-making authority to the Department of Labor. The Legislature has declared as the policy of this state that construction workers on public projects are to be paid the equivalent of the union wage in the locality. The Department of Labor's determination of that prevailing wage does not amount to the setting of any state policy. The Department is merely authorized to implement what the Legislature has already declared to be the law in Michigan.

In our judgment, the basic premise of plaintiffs' argument is invalid. Plaintiffs maintain that the prevailing wage statute is constitutionally defective because it delegates to the unions, or to the unions and contractor/employers together, the authority to determine the wage rate on state projects. The statute contains no such delegation. Rather, the statute expresses the policy that wages equal to union scale are to be paid to both union and nonunion workers on public construction projects. The Legislature did not confer on the unions and the contractor/employers the power to set the prevailing wage rate for public contracts. It merely adopted, as the critical standard to be used by the Department of Labor in determining prevailing

wage, the wage rate arrived at through a collective bargaining process which is completely unrelated to and independent of the prevailing wage statute. The purpose of collective bargaining is not to set the wage scale for *public* projects but rather to set the wage scale for *all* construction projects.

There is a vital distinction between conferring the power of making what is essentially a legislative determination on private parties and adopting what private parties do in an independent and unrelated enterprise. As Professor Davis aptly points out in his administrative law treatise:

"The one generalization [of state law concerning non-delegation] that may be worthy of repetition is this simple one: Much more likely to be sustained than statutes conferring the power of choice upon private parties are statutes whose operation depends upon private action which is taken for purposes which are independent of the statute." 1 Davis, Administrative Law (2d ed), § 3:12, p 196.

The crucial inquiry is whether the collective bargaining process is sufficiently independent of and unrelated to the prevailing wage statute to protect the public against collusive action which could result in an arbitrarily inflated wage rate for public contracts. We conclude that it is. The wage scale in the union contract is arrived at through extensive negotiations; it is based on economic realities existing in the market place; it represents a compromise between the opposing interests of the union employee and the contractor/employer; and the contractor/employer will be bound by the negotiated rate in bidding on private construction contracts, moreover, the Department of Labor is precluded, in determining prevailing wage, from consideration of collective agreements or under-

standings which are "controlled in any way by either an employee or employer organization". MCL 408.554; MSA 17.256(4). In our judgment these factors sufficiently safeguard the public interest.

Defendants further claim that the union rate, even when fairly negotiated, should not be the prevailing wage rate because it artificially raises the cost of public construction and prevents competition in the construction industry. These arguments amount to a challenge to the wisdom of the legislation, not its constitutionality, and were adequately answered by the Court in *Baughn v Gorrell & Riley, supra,* 542:

"The wisdom of this type of legislation may be debatable, but that is not a judicial question. If this statute increases the cost of public works which the taxpayer must pay, if it has an adverse effect upon competitive bidding, or if it aids the labor union movement, these are matters addressed to the judgment of the elected representatives of the people. Our consideration of the case must be confined to the constitutionality of the law and not its policy. Any doubt must be resolved in its favor."

We next address the issue of whether the state has "sponsored" the bonds of West Ottawa and Wyoming Public Schools within the meaning of the prevailing wage law. We answer in the affirmative.

MCL 408.552; MSA 17.256(2) provides that the prevailing wage must be paid on contracts on state projects that are "sponsored or financed in whole or in part by the state". The term "sponsor" has been defined as follows:

"[O]ne who binds himself to answer for another's default: SURETY * * * [and] one who assumes respon-

sibility for some other person or thing * * *." *Webster's Third New International Dictionary (Unabridged, 1970),* p 2204.

Section 8 of 1961 PA 108 provides that when a school district is unable to pay the principal and interest on its qualified bonds, the state "shall loan to it an amount sufficient to enable the school district to make the payment". MCL 388.958; MSA 3.424(118). Under this provision, the state acts as a surety for the payment of qualified bonds when they are due. The Wyoming Public School has already qualified its bonds with the state and West Ottawa intended to do likewise. Therefore, we conclude that the state is in the position of a sponsor of their planned construction projects. The trial court properly decided this issue.

Affirmed in part, reversed in part. The permanent injunction is dissolved. No costs, a public question.