ASSOCIATED BUILDERS AND CONTRACTORS v DEPARTMENT OF CONSUMER AND INDUSTRY SERVICES DIRECTOR (ON REMAND)

Docket No. 234037. Submitted April 5, 2005, at Detroit. Decided July 19, 2005, at 9:00 a.m. Leave to appeal sought.

The Associated Builders and Contractors, Saginaw Valley Area Chapter, brought an action in the Midland Circuit Court against the director of the Department of Consumer and Industry Services, now the Department of Labor and Economic Growth, and the Midland County prosecuting attorney, seeking a declaration that the prevailing wage act, MCL 408.551 *et seq.*, is unconstitutional because of the delegation of legislative authority to private parties and because of vagueness. Several parties were allowed to intervene in the action. The circuit court, Thomas L. Ludington, J., dismissed the vagueness claim and allowed the claim of improper delegation of legislative authority to proceed to discovery. The intervening defendants were granted leave to file an interlocutory appeal regarding the ruling on the claim of improper delegation of legislative authority, and the plaintiff cross-appealed as of right the dismissal of the vagueness claims. The Court of Appeals, WHITBECK, C.J., and WHITE and DONOFRIO, JJ., in an unpublished opinion per curiam, issued August 5, 2003 (Docket No. 234037), determining that the plaintiff had not alleged an actual controversy, reversed the denial of the defendants' motion for summary disposition of the claim of unconstitutional delegation of legislative authority and affirmed the dismissal of the vagueness claims. The Supreme Court reversed and remanded for a determination of the appeal and cross-appeal on the merits. 472 Mich 117 (2005).

On remand, the Court of Appeals *held*:

1. The circuit court erred in allowing the plaintiff's claim of unconstitutional delegation of legislative authority to proceed to discovery, and summary disposition for the defendants is ordered with respect to this claim. The Legislature, by enacting the prevailing wage act, has not delegated any legislative, policy-making authority to the Department of Consumer and Industry Services. The Legislature has declared as the policy of this state that construction workers on public projects are to be paid the

equivalent of the union wage in the locality. The department's determination of that prevailing wage does not amount to the setting of any state policy. The department is merely authorized to implement what the Legislature has already declared to be the law in Michigan. The Legislature did not confer on the unions and the contractor-employers the power to set the prevailing wage rate for public contracts. It merely adopted, as the critical standard to be used by the department in determining the prevailing wage, the wage rate arrived at through a collective bargaining process that is completely unrelated to and independent of the prevailing wage act. To the extent that the plaintiff's supplemental brief asserts that job targeting is a collusive practice that springs from the collective bargaining process and is precisely the kind of practice that taints the collective bargaining process in relation to the prevailing wage act, the plaintiff has acknowledged that job targeting or market recovery programs do not violate antitrust laws and may constitute protected concerted activity under the National Labor Relations Act, 29 USC 151 *et seq.*

2. The party challenging the facial constitutionality of an act must establish that no set of circumstances exists under which the act would be valid. Because the plaintiff made no such showing, its claim that the prevailing wage act is vague on its face fails.

3. The plaintiff's claim that the prevailing wage act is unconstitutionally vague as applied is based on an erroneous belief that a simple failure to pay the prevailing wage subjects a contractor to a misdemeanor prosecution. Although the prevailing wage act makes it a misdemeanor to violate a provision of the act and the act contemplates that the contractor will pay the prevailing wage, the failure to pay the prevailing wage, by itself, does not constitute a violation of the provisions of the act.

4. The plaintiff's claim that the prevailing wage act is unconstitutionally vague on its face and as applied because contractors must routinely speculate about whether their pay and work practices on public construction projects comport with the prevailing wage act relates to the department's administration of the act and does not affect the constitutionality of the act.

Affirmed in part and reversed in part.

WHITBECK, C.J., concurring, stated that the plaintiff failed to exhaust available administrative remedies with respect to the claim that the prevailing wage act has led to a two-tier rate system that allows unions and unionized contractors to establish one set of high rates applicable to public works projects but does not constrain them from negotiating another set of lower rates for privately funded projects. Thus, judicial review of the claim that

the prevailing wage act constitutes an unconstitutional delegation of legislative authority is foreclosed. The plaintiff, in challenging the prevailing wage act as unconstitutionally vague, has claimed that the act has increased the cost of public works projects over what they would cost in the open market. The claim involves a public policy matter more properly addressed to the Legislature, not the judiciary.

*Masud, Gilbert & Patterson, P.C.* (by *David John Masud* and *Kraig M. Schutter*), for Associated Builders and Contractors, Saginaw Valley Area Chapter.

*Michael A. Cox,* Attorney General, *Thomas L. Casey,* Solicitor General, and *Richard P. Gartner,* Assistant Attorney General, for the Consumer and Industry Services Director.

*Jensen, Gilbert, Smith & Borrello, P.C.* (by *Lawrence Wm. Smith*), for the Midland County Prosecuting Attorney.

*Smeltzer, Aptaker & Shephard, P.C.* (by *Gary L. Lieber* and *Anessa Abrams*), and *Sachs Waldman* (by *Mary Ellen Gurewitz)* for the Michigan Chapter of the National Electrical Contractors Association, the Michigan Mechanical Contractors Association, and the Michigan Chapter of the Sheet Metal Air Conditioning Contractors National Association.

*Klimist, McKnight, Sale, McClow & Canzano, P.C.* (by *John R. Canzano*), and *Jensen, Gilbert, Smith & Borrello* (by *André R. Borrello*) for the Michigan State Building & Construction Trades Council.

*David M. Gilbert* for the Saginaw County Prosecuting Attorney.

ON REMAND

Before: WHITBECK, C.J., and WHITE and DONOFRIO, JJ.

WHITE, J. This case is before us on remand from the Supreme Court. Plaintiff brought this action for declaratory and injunctive relief, challenging the constitutionality of the prevailing wage act (PWA), MCL 408.551 *et seq.*, as vague and as an unconstitutional delegation of legislative authority to private parties, specifically, unions and union contractors. The circuit court dismissed plaintiff's vagueness claim on defendants' motions for summary disposition, and allowed the delegation of legislative authority claim to proceed to discovery. Defendants-intervenors were granted leave to file an interlocutory appeal of the latter ruling, and plaintiff cross-appealed as of right the dismissal of its vagueness claim.

Our initial opinion concluded that, because plaintiff had not alleged an "actual controversy," it could not seek declaratory relief. Thus, we did not reach the merits of the constitutional challenges; we reversed the circuit court's denial of summary disposition of the delegation of legislative authority claim and affirmed the dismissal of the vagueness claim. See *Associated Builders & Contractors v Dep't of Consumer & Industry Services Director (ABC I)*, unpublished opinion per curiam, issued August 5, 2003 (Docket No. 234037). Plaintiff applied for leave to appeal in the Supreme Court. After hearing oral arguments on plaintiff's application for leave, in lieu of granting leave to appeal, the Supreme Court reversed and remanded for reconsideration by this Court, stating:

> We reverse the decision of the Court of Appeals and hold that plaintiff has presented an "actual controversy" so that plaintiff can seek declaratory relief under MCR 2.605. We do not address the substantive issue regarding the constitutionality of the PWA; instead, we remand to the Court of Appeals for reconsideration and resolution of the defendants' appeal and plaintiff's cross-appeal on the merits. [*Associated Builders & Contractors v Dep't of Consumer & Industry Services Director*, 472 Mich 117, 120; 693 NW2d 374 (2005) (*ABC II*).]

Having considered the merits of the appeal and cross-appeal, we conclude that the PWA does not unconstitutionally delegate legislative authority to private parties, and so we reverse the circuit court's denial of summary disposition on that claim. In the cross-appeal, we conclude that the PWA is not unconstitutionally vague on its face or as applied, and affirm the circuit court's dismissal of those claims, though for somewhat different reasons.

I. APPEAL

Defendants assert that plaintiff's challenge to the PWA as an unconstitutional delegation of legislative authority to private parties must fail because that precise claim was rejected by this Court in *West Ottawa Pub Schools v Director, Dep't of Labor,* 107 Mich App 237; 309 NW2d 220 (1981).

This Court reviews de novo the circuit court's denial of summary disposition. *Maiden v Rozwood,* 461 Mich 109, 118; 597 NW2d 817 (1999). The constitutionality of a statute is a question of law this Court reviews de novo. *Dep't of State v MEA-NEA,* 251 Mich App 110, 115-116; 650 NW2d 120 (2002). Legislation is presumed constitutional absent a clear showing to the contrary. *Caterpillar Inc v Dep't of Treasury,* 440 Mich 400, 413; 488 NW2d 182 (1992). Statutes must be construed in a constitutional manner if possible. *Id.*

A. *WEST OTTAWA*

*West Ottawa* was an appeal of the circuit court's declaratory judgment and permanent injunction precluding enforcement of the PWA on the ground that the act constituted an unlawful delegation of legislative power to private parties, i.e., unions. This Court reversed, stating:

Plaintiffs argue that, because the Department of Labor [now the Department of Consumer and Industry Services (CIS)][1] is statutorily required to set the prevailing wage rate at union rate, the Legislature has unconstitutionally delegated its power to a private party. We cannot agree.

Article 4, § 1, of the Michigan Constitution prohibits the delegation of "legislative power". The Michigan doctrine of nondelegation has been expressed in terms of a "standards" test:

" 'There is no doubt that a legislative body may not delegate to another its lawmaking powers. It must promulgate, not abdicate. This is not to say, however, that a subordinate body or official may not be clothed with the authority to say when the law shall operate, or as to whom, or upon what occasion, *provided, however that the standards prescribed for guidance are as reasonably precise as the subject matter requires or permits.*' (Emphasis supplied.)" *Detroit v Detroit Police Officers Ass'n,* 408 Mich 410, 458; 294 NW2d 68 (1980), quoting *Osius v St Clair Shores,* 344 Mich 693, 698; 75 NW2d 25 (1956).

The preciseness of the standards will vary in proportion to the degree to which the subject regulated requires constantly changing regulation. *Dep't of Natural Resources v Seaman,* 396 Mich 299, 309; 240 NW2d 206 (1976). As stated by the Court in *G F Redmond & Co v Michigan Securities Comm,* 222 Mich 1, 5; 192 NW 688 (1923):

"The power to carry out a legislative policy enacted into law under the police power *may be delegated to an administrative board under quite general language,* so long as the exact policy is clearly made apparent, and the administrative board may carry out in its action the policy declared and delegated * * *. This marks the line between arbitrary officiousness and the exercise of delegated power to carry out a designated policy under the police power."

In *Male v Ernest Renda Contracting Co, Inc,* 122 NJ Super 526; 301 A2d 153 (1973), *aff'd* 64 NJ 199; 314 A2d

---

[1] The CIS is now named the Department of Labor and Economic Growth (DLEG).

361 (1974), *cert den* 419 US 839; 95 S Ct 69; 42 L Ed 2d 66 (1974), the court reversed the trial court's finding that the New Jersey prevailing wage act was unconstitutional as an unlawful delegation of legislative power to a private party. *Under the New Jersey act, the Commissioner of Labor established the prevailing wages for state projects from collective bargaining agreements. The Commissioner did not adopt any further rules or regulations but took the collective bargaining agreement that covered the majority of the workers in the locality and used the wages in that agreement as the prevailing rate.* In holding that the statute was not unconstitutional, the appellate court reasoned:

"We do not find that the act, or the Commissioner's interpretation thereof, presents a problem of delegation of legislative power. As we view the act, the Commissioner has not been delegated power to perform a legislative function; rather, he has merely been granted the power, as a matter of legislative convenience, to determine a set of facts, *i.e.,* the wage rates established under collective bargaining agreements in given circumstances. The Legislature has determined, for reasons set forth in section 1 of the act (NJSA 34:11-56.25), that the wages paid under collective bargaining agreements negotiated between labor unions representing a majority of the workmen engaged in the trade under collective bargaining agreements and their employers shall be the wages paid in the performance of public work. That public policy determination was for the Legislature. We find no constitutional bar thereto. To conclude, as the trial judge did, that under such a scheme 'the public is not sufficiently protected against such arbitrary or self-motivated action on the part * * * of such private party to whom the legislative function has really been delegated,' misses the point and actually constitutes a substitution of judicial judgment for that of the Legislature." *Male v Ernest Renda Contracting Co, supra,* 533-534.

Accord, *Kugler v Yocum,* 69 Cal 2d 371; 71 Cal Rptr 687; 445 P2d 303 (1968), *Union School Dist of Keene v Comm'r of Labor,* 103 NH 512; 176 A2d 332 (1961), *Baughn v Gorrell & Riley,* 311 Ky 537; 224 SW2d 436 (1949), *Metropolitan Water Dist of Southern California v Whitsett,* 215

Cal 400; 10 P2d 751 (1932). [Contra,] *Industrial Comm v C
& D Pipeline, Inc,* 125 Ariz 64; 607 P2d 383 (1980) [sic,
1979], *Bradley v Casey,* 415 Ill 576; 114 NE2d 681 (1953),
*Wagner v Milwaukee,* 177 Wis 410; 188 NW 487 (1922).

While we recognize that there is a split of authority on
this issue, we are persuaded that *Male, supra,* presents the
better view. *The Michigan Legislature has not delegated
any legislative, policy-making authority to the Department
of Labor. The Legislature has declared as the policy of this
state that construction workers on public projects are to be
paid the equivalent of the union wage in the locality. The
Department of Labor's determination of that prevailing
wage does not amount to the setting of any state policy.* The
Department is merely authorized *to implement what the
Legislature has already declared to be the law* in Michigan.

In our judgment, *the basic premise of plaintiffs' argument
is invalid. Plaintiffs maintain that the prevailing wage
statute is constitutionally defective because it delegates to the
unions, or to the unions and contractor/employers together,
the authority to determine the wage rate on state projects. The
statute contains no such delegation.* Rather, the statute
expresses the policy that wages equal to union scale are to be
paid to both union and nonunion workers on public construc-
tion projects. *The Legislature did not confer on the unions
and the contractor/employers the power to set the prevailing
wage rate for public contracts.* It merely adopted, as the
critical standard to be used by the Department of Labor in
determining prevailing wage [sic], the wage rate arrived at
through a collective bargaining process which is completely
unrelated to and independent of the prevailing wage statute.
The purpose of collective bargaining is not to set the wage
scale for *public* projects but rather to set the wage scale for *all*
construction projects.

There is a vital distinction between conferring the
power of making what is essentially a legislative determi-
nation on private parties and adopting what private parties
do in an independent and unrelated enterprise. [*West
Ottawa,* 107 Mich App at 242-246 (emphasis added).]

We conclude that *West Ottawa* is on point and we reject plaintiff's unlawful delegation challenge.[2]

### B. SUPPLEMENTAL BRIEFING AFTER REMAND

After the Supreme Court remanded this case to this Court, *ABC II*, 472 Mich at 129, this Court granted plaintiff's motion to file a supplemental brief. Defendants filed a response brief. Having reviewed the supplemental briefs after the remand, we conclude that plaintiff's arguments are largely addressed by our adoption of *West Ottawa*[3] and that the remaining issues are without merit.

---

[2] Our adoption of *West Ottawa* notwithstanding, we acknowledge the validity of plaintiff's arguments that the CIS, now the DLEG, should refine its internal methods of gathering information from which it determines prevailing wage rates (e.g., so that if a two-tiered wage system has been negotiated, it is made known to the CIS and incorporated into its prevailing wage determination and the possibility of an arbitrary rate is thus foreclosed). However, plaintiff's complaints are properly addressed to the Legislature, not the courts, as the complaints center on the wisdom of tying prevailing wage rates under the PWA to collectively bargained agreements. "A valid statute is not rendered unconstitutional on the basis of improper administration." *Council of Organizations and Others for Ed about Parochiaid, Inc v Governor,* 455 Mich 557, 570-571; 566 NW2d 208 (1997).

[3] Plaintiff's supplemental brief asserts:

> [T]he PWA constitutes an unlawful delegation of legislative authority because it requires the Michigan Department of Labor and Economic Growth ("DLEG") to adopt in wholesale fashion the agreements of interested private third parties for setting wage rates under the law. The PWA grants authority to unions and unionized contractors to establish one set of high rates applicable to public works projects through their collective bargaining agreements, to which all contractors are bound on public construction projects, but does not constrain them from negotiating another set of lower and more market reflective rates for use on privately-funded projects. This "two-tier" rate system is negotiated with one eye fixed firmly on the PWA, because it provides safe harbor for the artificially high public works wage rates in an otherwise competitive marketplace. The collusive practice of job targeting—

Plaintiff's supplemental brief draws this Court's attention to *J A Croson Co v J A Guy, Inc,* 2003 NLRB LEXIS 328, a hearing referee's decision issued on June 27, 2003, subsequent to *J A Croson Co v J A Guy, Inc,* 81 Ohio St 3d 346; 691 NE2d 655 (1998).[4] Plaintiff asserts that

> litigation of that Ohio state court case (*Croson*) has continued through the NLRB, the recent result of which calls into question whether or not job targeting programs are as protected as the Intervenors contend.

\* \* \*

> Now the Board [NLRB] has determined that valid arguments exist to warrant a finding that job targeting programs may be inimical to state prevailing wage projects as well.

The referee's decision in *J A Croson,* 2003 NLRB LEXIS 328, is neither binding nor persuasive authority. The issue addressed therein has no bearing on a constitutional analysis of Michigan's PWA. Specifically, the referee's decision addressed a technical timing issue,

---

which springs from the collective bargaining process and effectively establishes a two-tier rate system—is precisely the kind of practice that taints the collective bargaining process in relation to the PWA. Because the rates negotiated for use on PWA projects are artificially high, and because they result from collusive bargaining to the detriment of the Michigan tax-paying public, and because the DLEG is powerless under the statutory scheme to prevent it, the PWA constitutes an unlawful delegation of legislative authority to private parties.

[4] In *J A Croson,* 81 Ohio St 3d 346, an unsuccessful bidder on two public projects brought suit against the successful bidder, alleging that by cooperating with the union to receive subsidies under a job targeting program, the successful bidder violated Ohio's prevailing wage law. The Ohio Supreme Court held that the National Labor Relations Act, at § 29 USC 157, preempts the Ohio state prevailing wage regulations "to the extent that those provisions could be construed to restrain or inhibit the federally protected use of job targeting programs." *J A Croson,* 81 Ohio St 3d at 358.

i.e., in the event a state court suit is preempted by the NLRB's exclusive jurisdiction, at what time does the state suit become an unfair labor practice in violation of the National Labor Relations Act (NLRA).

To the extent that plaintiff's supplemental brief asserts that job targeting is "a collusive practice [that] springs from the collective bargaining process ... [and] is precisely the kind of practice that taints the collective bargaining process in relation to the PWA," as noted in our initial opinion,[5] we agree with the circuit court that plaintiff had acknowledged that job targeting or market recovery programs do not violate antitrust laws and may constitute protected concerted activity under the NLRA. Plaintiff's supplemental brief raises nothing to alter our original analysis.

We reverse the circuit court's determination allowing discovery to proceed and order that summary disposition enter in defendants' favor on the unconstitutional delegation of legislative authority challenge.[6]

## II. CROSS-APPEAL

On cross-appeal, plaintiff argues that the PWA is unconstitutionally vague, both on its face and in application. The circuit court dismissed plaintiff's vagueness challenges, and we affirm.

### A. FACIAL CHALLENGE ON VAGUENESS GROUNDS

Generally, "[t]he party challenging the facial constitutionality of an act 'must establish that no set of

---

[5] See *ABC I,* slip op at 11.

[6] Defendants' final argument in the principal appeal, that plaintiff failed to exhaust administrative remedies, was alluded to, but not squarely raised below, nor was it addressed by the circuit court. Thus we do not address it. *Fast Air, Inc v Knight,* 235 Mich App 541, 549; 599 NW2d 489 (1999).

circumstances exists under which the [a]ct would be valid.[7] The fact that the . . . [a]ct might operate unconstitutionally under some conceivable set of circumstances is insufficient . . . .' " *Straus v Governor,* 459 Mich 526, 543; 592 NW2d 53 (1999), quoting *United States v Salerno,* 481 US 739, 745; 107 S Ct 2095; 95 L Ed 2d 697 (1987). " '[S]tatutes which do not involve First Amendment freedoms must be examined in light of the facts of the case at hand.' " *BCBSM v Governor,* 422 Mich 1, 93; 367 NW2d 1 (1985), quoting *People v Howell,* 396 Mich 16, 21; 238 NW2d 148 (1976).

> A law that does not reach constitutionally protected conduct and therefore satisfies the overbreadth test may nevertheless be challenged on its face as unduly vague, in violation of due process; however, to succeed, the complainant must demonstrate that the law is impermissibly vague in all of its applications. [16B Am Jur 2d, Constitutional Law, § 920, p 516, citing *Village of Hoffman Estates v Flipside, Hoffman Estates, Inc,* 455 US 489; 102 S Ct 1186; 71 L Ed 2d 362 (1982).]

In this case, because the PWA does not implicate constitutionally protected conduct, plaintiff may succeed in a facial vagueness challenge only if it demonstrates that the law is impermissibly vague in all its applications.[8] Because plaintiff neither argues nor sup-

---

[7] Facial challenges are permitted in other limited contexts. For example, if the law challenged reaches a substantial amount of constitutionally protected conduct, i.e., where free speech or free association is affected, it may be facially challenged. See *Kolender v Lawson,* 461 US 352, 358 n 8; 103 S Ct 1855; 75 L Ed 2d 903 (1983).

[8] In a supplemental authority brief filed during the pendency of the initial appeal to this Court, plaintiff cites *People v Barton,* 253 Mich App 601; 659 NW2d 654 (2002), and *People v Boomer,* 250 Mich App 534; 655 NW2d 255 (2002), as supporting its position. Plaintiff is incorrect, as the statutes challenged in those cases affected First Amendment interests. The ordinance challenged in *Barton* prohibited "any indecent, insulting, immoral or obscene conduct in any public place." 253 Mich App at 602.

ports that the PWA is impermissibly vague in all its applications, its facial challenge on vagueness grounds fails.

### B. "VAGUENESS AS APPLIED" CHALLENGE

"To give fair notice, a statute must give a person of ordinary intelligence a reasonable opportunity to know what is prohibited or required. The statute cannot use terms that require persons of ordinary intelligence to guess its meaning and differ about its application. A statute is sufficiently definite if its meaning can be fairly ascertained by reference to judicial interpretations, the common law, dictionaries, treatises, or the commonly accepted meanings of words." [*People v Beam,* 244 Mich App 103, 105; 624 NW2d 764 (2000), quoting *People v Noble,* 238 Mich App 647, 652; 608 NW2d 123 (1999).]

We reject plaintiff's "vagueness as applied" challenge because we agree with defendants that the misdemeanor provision of the act does not apply to a simple failure to pay according to the contract. Whether construed strictly as a criminal statute or broadly as a remedial statute, the words of the statute itself must control. *Western Michigan Univ Bd of Control v Michigan,* 455 Mich 531, 538, 545-546; 565 NW2d 828 (1997). The PWA makes it a misdemeanor to violate a provision of the act. MCL 408.557. The act requires the contractor to include prevailing wage provisions in a covered contract, MCL 408.552, and to post prevailing wage

---

The *Barton* Court stated, "We note that defendant may challenge the ordinance as unconstitutionally vague on its face because it threatens First Amendment interests." 253 Mich App at 605. The statute at issue in *Boomer* provided that "[a]ny person who shall use any indecent, immoral, obscene, vulgar or insulting language in the presence or hearing of any woman or child shall be guilty of a misdemeanor." 250 Mich App at 536. The *Boomer* Court noted that the statute "impinges on First Amendment freedoms" in that it unquestionably "reaches constitutionally protected speech." 250 Mich App at 541-542.

information at the construction site and keep accurate records of the actual wages paid, MCL 408.555. The act also authorizes the contracting agent to terminate a contractor's right to proceed with any part of the contract for which prevailing wages are not, in fact, paid, and to complete the contract with another contractor at the original contractor's expense. MCL 408.556. While the act contemplates that the contractor will pay the prevailing wage, and provides for the right to terminate the contract for failure to do so, it cannot, be said that the failure to pay the prevailing wage in and of itself constitutes a violation of the provisions of the act.[9] Thus, we reject plaintiff's "vagueness as applied" challenge to the act because the challenge is based on an erroneous construction of the act.

### C. SPECULATION ABOUT STANDARDS

Plaintiff's final argument on cross-appeal is that the circuit court clearly erred in dismissing its claim that the PWA is unconstitutionally vague both on its face and in its application because discovery would show that nonunion construction contractors subject to the act must routinely speculate about whether their pay and work practices on prevailing wage projects comport with those derived from convoluted, constantly evolving, and generally unavailable collective bargaining agreements and unwritten understandings between trade unions and union contractors.

We conclude that this issue need not be addressed. "A valid statute is not rendered unconstitutional on the basis of improper administration." *Council of Organi-*

---

[9] Nothing in *Western Michigan Univ,* argues to the contrary. The language relied on by defendants clearly states that the act requires that the contract contain certain provisions, and the issue presented here was not discussed.

*zations v Governor*, 455 Mich 557, 570-571; 566 NW2d 208 (1997). The criticisms plaintiff articulates here of the PWA, even if true, would not render the entire act unconstitutional. Plaintiff's promise that discovery would show these problems exist is not helpful. The alleged problems plaintiff's members have with the PWA relate to the CIS's administration of the act or should be addressed to the Legislature and do not affect the constitutionality of the act.

We affirm the dismissal of plaintiff's vagueness challenges and reverse the denial of summary disposition as to plaintiff's delegation challenge.

DONOFRIO, J., concurred.

WHITBECK, C.J. (*concurring*). I concur with the majority in this matter. I write separately to emphasize, briefly, several points that I consider to be of some importance.

### I. OVERVIEW

At issue here is the constitutionality of the prevailing wage act,[1] sometimes referred to as the "Little Davis-Bacon Act" because the Legislature patterned it after the federal Davis-Bacon Act of 1931.[2]

The central provision of the prevailing wage act is § 2,[3] which provides:

> Every contract executed between a contracting agent and a successful bidder as contractor and entered into pursuant to advertisement and invitation to bid for a state project which requires or involves the employment of

---

[1] MCL 408.551 *et seq.*

[2] Former 40 USC 276a *et seq.* (now 40 USC 3141 *et seq.*).

[3] MCL 408.552.

construction mechanics, other than those subject to the jurisdiction of the state civil service commission, and which is sponsored or financed in whole or in part by the state shall contain an express term that the rates of wages and fringe benefits to be paid to each class of mechanics by the bidder and all of his subcontractors, shall not be paid less than the wage and fringe benefit rates prevailing in the locality in which the work is to be performed. . . .

Section 4[4] of the prevailing wage act implements § 2 by providing a method for establishing the "prevailing wages and fringe benefits" on the basis of collective bargaining agreements in the locality:

The commissioner[5] shall establish prevailing wages and fringe benefits at the same rate that prevails on projects of a similar character in the locality under collective agreements or understandings between bona fide organizations of construction mechanics and their employers. . . .

As the Attorney General points out, plaintiff Associated Builders and Contractors, Saginaw Valley Area Chapter (the Saginaw ABC) does not here contend that the Legislature lacks the authority to enact a prevailing wage act, nor does the Saginaw ABC contend that the Legislature lacks the authority to establish a method for the periodic adjustment of those rates without direct legislative action. Although the Saginaw ABC advances a number of contentions in this matter, there are two

---

[4] MCL 408.554.

[5] The prevailing wage act defines the "commissioner" as "the department of labor." MCL 408.551(d). Under Executive Reorganization Order No. 1996-2, the Department of Labor became the Department of Consumer and Industry Services, MCL 445.2001, of which defendant Kathleen Wilbur was the director. Under Executive Reorganization Order No. 2003-18, MCL 445.2011, the Department of Consumer and Industry Services became the Department of Labor and Economic Growth. I will use the abbreviation "CIS" in this concurrence to delineate the responsible department.

with which I am particularly concerned. The first is that, in practice, there is a "two-tier" rate system that allows unions and unionized contractors to establish one set of high rates applicable to public works projects but does not constrain them from negotiating another set of lower rates for use in privately funded projects. The second is that the rates negotiated for use on prevailing wage act projects—a phrase that the Saginaw ABC appears to use interchangeably with public works projects, presumably meaning those projects that are covered by the prevailing wage act—are "artificially high." I will deal with these two contentions in order below.

## II. THE "TWO-TIER" SYSTEM

The Saginaw ABC contends that the prevailing wage act is an unconstitutional delegation of legislative authority. In support of this contention, the Saginaw ABC asserts that the CIS is "a mere paper shuffler in the process of determining prevailing wages" and that "the regulation of wages and benefits on state-funded construction projects in Michigan is passed to unions and unionized contractors." The Saginaw ABC further asserts that, "working together in collusion," such unions and unionized contractors can set inflated wage and fringe benefit rates in collective bargaining agreements and, at the same time, "make side agreements to adhere to lower rate scales which enable unionized contractors to compete in the everyday, 'dog-eat-dog' private marketplace."

The Saginaw ABC identifies two types of such "side agreements": market recovery programs and job targeting programs. As I understand it, under a market recovery program a union may sacrifice wages in order to ensure that a unionized contractor can compete for

the award of a contract for a given project. Such market recovery programs allow the modification of wages, fringe benefits, and work rules on a job-by-job basis. Thus, for example, the union may agree that operating engineers, who under the collective bargaining agreement with the unionized contractor are entitled to $25 an hour, will receive $23 an hour. As the defendants-intervenors frankly concede, unions institute such market recovery programs in the face of nonunion competition that pays a lower wage scale. Theoretically at least, the cumulative effect of the lower wages that the unionized contractor will pay allows that contractor to be competitive in bidding for projects and therefore "recover" the market that the contractor would otherwise have lost.

As I understand it, a job targeting program is a device for equalizing the pay of union members whose unionized contractor employer has successfully won a contract under a market recovery program. Using again the example of operating engineers who will make $23 an hour on a project pursuant to a market recovery program, the union will "target" that lower salary and will make up the difference between what the operating engineers would otherwise earn under the collective bargaining agreement, $25 an hour, with a subsidy from a job targeting fund that the union collects from the entire bargaining unit through additional dues.

The Saginaw ABC labels these programs a "recent form of obnoxious collusion" and asserts that, by effectively establishing a two-tier rate system, they "taint" the collective bargaining process in relation to the prevailing wage act. I would first note that this argument would have considerably more traction had the Saginaw ABC actually challenged the market recovery and job targeting programs at the trial court level. However, counsel for the Saginaw ABC made it clear that it was making no such challenge:

*Mr. Masud:* Judge, ABC, and I will make very clear on this, because there's some other counter-claims that ABC needs to be concerned about.

We are not challenging the lawfulness of market recovery. . . .

We don't need to show that that process is illegal. In fact, we state in our brief that it is not—job targeting is not illegal. . . .

\* \* \*

I will make it very clear for this record that ABC is not in any way, shape, or form challenging employers and Union's right to do these things.

Secondly, I note that the record is barren of *any* suggestion that the Saginaw ABC engaged in *any* effort through administrative proceedings to have the CIS consider these "side agreements" in establishing prevailing wages. As the defendants-intervenors point out, the doctrine of exhaustion of administrative remedies is well-settled in Michigan and requires a party to exhaust whatever administrative remedies are available before challenging an agency action in court.[6] There are a number of very good reasons for the doctrine.

(1) [A]n untimely resort to the courts may result in delay and disruption of an otherwise cohesive administrative scheme; (2) judicial review is best made upon a full factual record developed before the agency; (3) resolution of the issues may require the accumulated technical competence of the agency or may have been entrusted by the Legislature to the agency's discretion; and (4) a successful agency settlement of the dispute may render a judicial resolution unnecessary.[7]

---

[6] *Judges of the 74th Dist v Bay Co*, 385 Mich 710, 728; 190 NW2d 219 (1971).

[7] *Int'l Business Machines Corp v Dep't of Treasury*, 75 Mich App 604, 610; 255 NW2d 702 (1977).

It is certainly possible, as the Saginaw ABC asserts, that unions and unionized contractors are colluding to conceal the existence of their market recovery and job targeting programs from the CIS. It is certainly possible that this collusion taints the collective bargaining process. It is certainly possible that this taint results in higher wage rates for projects covered by the prevailing wage act. But there is not a scintilla of evidence in this record that this is so. And the reason that no such evidence exists in the record is that the Saginaw ABC made no attempt, by complaint, petition, or otherwise, to engage the accumulated technical competence of the CIS to determine whether any of these possibilities might be confirmed.

In summary, it is one thing to label an administrative agency, which might be able to settle such issues conclusively, as a mere paper shuffler; rhetoric is often its own reward. It is quite another to seek untimely judicial intervention that has the effect, intended or not, of disrupting an otherwise cohesive administrative scheme. And it is extraordinarily inefficient to then seek judicial review without the benefit of a full factual record developed before the agency. As a matter of law, therefore, the Saginaw ABC has failed here to exhaust its administrative remedies. The trial court thus erred when it denied summary disposition regarding the Saginaw ABC's unlawful delegation claim on the basis that there were material issues of fact about which discovery could proceed.

### III. "ARTIFICIALLY HIGH" WAGE RATES

In support of its contention that the prevailing wage act is unconstitutionally vague, the Saginaw ABC asserts:

[T]o say that the [prevailing wage act] requires the payment of "prevailing" wages in the locality is a misno-

mer. Union construction workers perform far less construction work in Michigan than do non-union construction workers. The wages paid to this minority of workers under collective bargaining agreements are well above [the] industry average. Since those high rates found in collective bargaining agreements are used exclusively to set the rates established by the CIS on prevailing wage projects, the "prevailing" wages under the Act are always far above the *average* for the industry. Thus, it cannot be said that they are truly "prevailing."

Since trade unions are effectively able to force their exorbitant wage and fringe benefits rates on all publicly-funded construction projects in Michigan through the application of the [prevailing wage act], the overall impact of the [prevailing wage act] is to increase the cost to the government for public works construction projects over what they would cost in the open market.[8]

In a footnote, the Saginaw ABC goes further:

The resultant unnecessary increased cost is not the only affront to Michigan taxpayers. The [prevailing wage act's] original purpose has a checkered past as well. According to the Michigan Supreme Court, the Act is patterned after the federal Davis-Bacon Act, 40 U.S.C. 276a, and has its same goals and purposes. *Western Michigan University v. State of Michigan*, 455 Mich 531, 535-536 (1977). The federal statute was enacted in 1931 in large part as a means by which to protect the higher wages of white construction workers in northern cities such as New York, Philadelphia and Detroit from being diluted through "cheap colored labor" from the southern states. Thiebolt, *Prevailing Wage Legislation*, Wharton School of the University of Pennsylvania, (1986), p. 30. There is very strong evidence that the Michigan [prevailing wage act] has reduced employment opportunities in particular for blacks. *Richard Vetter, supra,* referencing Robert P. Hunter, *Union Racial Discrimination is Alive and Well*, Mackinac Center for Public Policy, September 1977.

---

[8] Footnotes omitted.

Now, it may well be that the Congress passed the Davis-Bacon Act in order to insulate white construction workers from competition by "cheaper" African-American workers from the south. It may well be that the Michigan prevailing wage act has reduced employment opportunities for African-Americans in this state. It may well be that the prevailing wage act's reliance on collective bargaining agreements as determinative of prevailing wages in a locality is misplaced. It may well be that the overall effect of the prevailing wage act is to increase the cost to the government for public works construction projects over what they would cost in the open market. It may well be that each of these factors is an "affront" to Michigan citizens and taxpayers.

Unquestionably, however, these are public policy questions.[9] Equally unquestionably, there is nothing in our judicial commission that empowers us, as compared to the Michigan Legislature, to address them. Our legal training makes us no more qualified to resolve these public policy issues than teachers or truck drivers, no more able to sense and act upon the public will than funeral directors or fire fighters, no wiser in charting a course for sound labor policy in the state than plumbers or physicians. If the prevailing wage act should be reconstituted or even repealed, then it is the Michigan Legislature—popularly elected by teachers and truck drivers, funeral directors and fire fighters, plumbers and physicians, and the rest of our diverse society to address precisely these types of public policy questions —that must undertake this task.

---

[9] Of course, if the Legislature intended such public policy decisions to have a racially discriminatory effect, they would be subject to strict scrutiny by the courts. See, for example, *Washington v Davis*, 426 US 229, 241-242; 96 S Ct 2040; 48 L Ed 2d 597 (1976). But the Saginaw ABC has not brought an equal protection or due process claim asserting that the prevailing wage act is racially discriminatory on its face or as applied.

Thus, my personal opinion on the fairness or the soundness of the prevailing wage act—and, quite frankly, the opinion of the Saginaw ABC on the same public policy issues—has absolutely nothing to do with whether the act is unconstitutional by reason of unlawful delegation or vagueness. The Legislature is free to adopt bad policy; it is free to act unfairly; it is free to pursue ostensibly counterproductive or even downright foolish objectives, all without the judicial branch acting as a super-legislature and substituting its own version of what constitutes sound public policy. While this freedom is not unlimited—it is for this reason, among others, that we the people enact constitutions—our scope of review is extremely limited and we must exercise it with the greatest restraint. As this Court has said:

> That a statute may appear undesirable, unfair, unjust, or inhumane does not itself render the statute unconstitutional and empower a court to override the Legislature. *Doe v Dep't of Social Services,* 439 Mich 650, 681; 487 NW2d 166 (1992). Arguments that a statute is unwise or results in bad policy should be addressed to the Legislature. *People v Kirby,* 440 Mich 485, 493-494; 487 NW2d 404 (1992).[10]

If arguments that a statute needs change, or even repeal, should be addressed to the Legislature, then it most certainly follows that the courts should not step in to do what the Legislature has not done. And, as the attached chart shows, since 1972 there have been thirteen proposed amendments to exempt certain projects from the prevailing wage act. During the same period there have been ten attempts to repeal the act. However, no proposed amendment, or repeal, of the act has passed. In essence, the Saginaw ABC invites us to

---

[10] *Proctor v White Lake Twp Police Dep't,* 248 Mich App 457, 462; 639 NW2d 332 (2001).

do what the Legislature has refused to do: repeal the prevailing wage act. As is clear from the majority opinion, today we have declined that invitation.

**Michigan Prevailing Wage Act**
*History of Proposed Amendments*

| Year | Title | Primary Sponsor | Description | Status |
|------|-------|-----------------|-------------|--------|
| 2005 | HB 4351 | Rep. Hildenbrand | Eliminate requirement to pay prevailing wage on public school construction projects by amending MCL 408.551. | Referred to Committee on Employment Relations, Training & Safety. |
| 2005 | HB 4531 | Rep. Hildenbrand | Eliminate requirement to pay the prevailing wage on public school projects by amending MCL 408.551. | Referred to Committee on Employment Relations, Training & Safety. |
| 2003 | HB 4161 | Rep. Sheen | Eliminate requirement to pay prevailing wage on public school construction projects by amending MCL 408.551. | Referred to Committee on Employment Relations, Training & Safety. |
| 2001 | SB 82 | Sen. Steil | Eliminate requirement to pay prevailing wage on public school academy projects by amending MCL 408.551. | Referred to Committee on Education. |

| Year | Title | Primary Sponsor | Description | Status |
|------|-------|-----------------|-------------|--------|
| 2001 | SB 84 | Sen. Steil | Eliminate requirement to pay prevailing wage on public school projects by amending MCL 408.551. | Referred to Committee on Education. |
| 2001 | HB 4383 | Rep. Gosselin | Eliminate requirement to pay prevailing wage on public school, bridge, highway, and road projects by amending MCL 408.551. | Second reading in Committee on Employment Relations, Training & Safety. |
| 2001 | HB 4474 | Rep. Kuipers | Exempt projects building bridges used only for snowmobiling from the Michigan prevailing wage act by amending MCL 408.551. | Referred to Committee on Conservation and Outdoor Recreation. |
| 2000 | SB 1353 | Sen. Steil | Eliminate requirement to pay prevailing wage on public school academy projects by amending MCL 408.551. | Referred to Committee on Education. |
| 1999 | HB 4193 | Rep. Kuipers | Repeal the Michigan prevailing wage act, MCL 408.551 through 408.558. | Referred to Committee on Employment Relations, Training & Safety. |

| Year | Title | Primary Sponsor | Description | Status |
|------|-------|-----------------|-------------|--------|
| 1999 | HB 4271 | Rep. Kukuk | Repeal the Michigan prevailing wage act, MCL 408.551 through 408.558. | Referred to Committee on Employment Relations, Training & Safety. |
| 1999 | SB 122 | Sen. Steil | Eliminate requirement to pay prevailing wage on public school projects by amending MCL 408.551. | Referred to Committee on Human Resources, Labor, Senior Citizens & Veterans Affairs. |
| 1999 | SB 207 | Sen. Steil | Repeal the Michigan prevailing wage act, MCL 408.551 through 408.558. | Referred to Committee on Human Resources, Labor, Senior Citizens & Veterans Affairs. |
| 1998 | HB 5506 | Rep. Voorhees | Exempt bond projects approved by the state treasurer from the Michigan prevailing wage act by amending MCL 408.558. | Referred to Committee on Education. Reported with recommendation to refer to Committee on Labor & Occupational Safety. |
| 1997 | SB 131 | Sen. Steil | Repeal the Michigan prevailing wage act, MCL 408.551 through 408.558. | Referred to Committee on Human Resources, Labor, Senior Citizens & Veterans Affairs. |
| 1997 | SB 805 | Sen. Steil | Exempt certain projects subject to the Michigan prevailing wage act by amending MCL 408.558. | Referred to Committee on Labor & Occupational Safety. |

| Year | Title | Primary Sponsor | Description | Status |
|------|-------|-----------------|-------------|--------|
| 1995 | HB 4327 | Rep. DeLange | Repeal the Michigan prevailing wage act, MCL 408.551 through 408.558. | Referred to Committee on Human Resources & Labor. |
| 1995 | SB 95 | Sen. Steil | Repeal the Michigan prevailing wage act, MCL 408.551 through 408.558. | Referred to Committee on Human Resources, Labor & Veterans Affairs. |
| 1995 | SB 106 | Sen. Shugars and Sen. Steil | Exempt institutions of higher education from the Michigan prevailing wage act by amending MCL 408.551. | Referred to Committee on Human Resources, Labor & Veterans Affairs. |
| 1995 | SB 149 | Sen. Honigman | Repeal the Michigan prevailing wage act, MCL 408.551 through 408.558. | Referred to Committee on Human Resources, Labor & Veterans Affairs. |
| 1993 | HB 4812 | Rep. Profit | Require the Department of Labor to file complaints when it knows of violations of the Michigan prevailing wage act. | Referred to Committee on Labor. |
| 1993 | SB 92 | Sen. Honigman | Repeal the Michigan prevailing wage act. | Referred to Committee on Labor. |

| Year | Title | Primary Sponsor | Description | Status |
|---|---|---|---|---|
| 1991-1992 | HB 4157 | Rep. DeLange | Establish prevailing wages and fringe benefits on state projects pursuant to federal Davis-Bacon Act. | Referred to Committee on Labor. |
| 1991-1992 | SB 318 | Sen. Honigman | Repeal the Michigan prevailing wage act. | Referred to Committee on Labor. |
| 1991-1992 | SB 403 | Sen. Emmons | Exempt construction of or work on state mental health projects from the prevailing wage requirements. | Referred to Committee on Labor. |
| 1989-1990 | HB 4706 | Rep. Owen | Assign penalties for violations of the prevailing wage act and prevent bidding on state contracts by violators. | Referred to Committee on Labor. |
| 1989-1990 | SB 588 | Sen. Cherry | Assign penalties for violations of the Michigan prevailing wage act and provide for the payment of wage differentials. | Referred to Committee on Human Resources and Senior Citizens. |
| 1987-1988 | None | N/A | N/A | N/A |
| 1985-1986 | HB 4131 | Rep. DeLange | Enact a prevailing wage act pursuant to the federal act. | Referred to Committee on Labor. |

| Year | Title | Primary Sponsor | Description | Status |
|------|-------|-----------------|-------------|--------|
| 1983-1984 | HB 4364 | Rep. O'Connor | Repeal requirement to pay prevailing wage for state projects. | Referred to Committee on Labor. |
| 1981-1982 | None | N/A | N/A | N/A |
| 1979-1980 | HB 5464 | Rep. Conroy | Require EDC's to pay prevailing wage and fringe benefits | Passed. |
| 1977-1978 | HB 4233 | Rep. Elliott | Include school district in the definition of locality in MCL 408.551. | Passed and approved by Governor—1978 PA 100. |
| 1975-1976 | None | N/A | N/A | N/A |
| 1973-1974 | None | N/A | N/A | N/A |
| 1972 | None | N/A | N/A | N/A |