PEOPLE v BAYER

Docket No. 281479. Submitted May 7, 2008, at Detroit. Decided May 15,
    2008, at 9:05 a.m. Leave to appeal sought.

   Albert N. Bayer was bound over for trial in the Oakland Circuit Court
   on three counts of third-degree criminal sexual conduct, MCL
   750.520b(1)(f)(iv) and MCL 750.520d(1)(b), relating to a sexual
   relationship that he engaged in with his patient while functioning as
   the patient's psychiatrist. The court, Edward Sosnick, J., granted the
   defendant's motion to dismiss the charges, ruling that MCL
   750.520b(1)(f)(iv), which defines "force or coercion" used to accom-
   plish sexual penetration to include when the actor engages in the
   medical treatment or examination of the victim in a manner or for
   purposes that are medically recognized as unethical or unacceptable,
   represents an unconstitutional delegation of legislative authority
   because it permits a third party such as the American Psychiatric
   Association (APA) to make a determination of what constitutes
   prohibited behavior on the basis of its code of ethics. The prosecution
   appealed as of right.

      The Court of Appeals *held*:

      1. The provisions of MCL 750.520b(1)(f)(iv) do not violate the
   doctrine that a legislative body may not delegate to another its
   lawmaking powers. A vital distinction exists between conferring the
   power of making what is essentially a legislative determination on
   private parties and adopting what private parties do in an indepen-
   dent and unrelated enterprise. Where a private organization's stan-
   dards have significance independent of a legislative enactment, they
   may be incorporated into a statutory scheme to function as a
   measuring device without violating constitutional restrictions on
   delegation of legislative power. The statute refers to factual conclu-
   sions of independent significance that function as a measuring device
   and not an improper delegation of legislative authority. The statute
   relies on a determination of independent significance to ascertain
   whether a medical treatment or examination was conducted in a
   manner or for a purpose that is medically recognized as unethical or
   unacceptable. This finding is then used as the measure against which
   conduct by the medical professional will be evaluated. Aside from the
   factual determination made by the APA for its own purposes and

outside the context of this state's laws regarding what constitutes inappropriate and unethical behavior for its members, it is the Legislature that defines and delineates the legal consequences that flow from that limited factual determination. By using such independent determinations as a referent, the Legislature is not delegating how that fact will be used.

2. MCL 750.520b(1)(f)(*iv*) is not unconstitutionally vague; it adequately notified the defendant that the conduct in which he engaged was criminal because it is undisputed that the intentional touching of a patient for the purpose of sexual arousal or gratification is considered unacceptable and unethical.

3. The manipulation of the patient within the context of a medical or treatment relationship is determinative of the presence of force or coercion. The presence of a victim's consent is not necessarily the factual equivalent of the absence of coercion. The focus of the inquiry is a determination of the validity of that consent. The fact that a victim consented to a touching, or even voluntarily pursued an intimate relationship with the medical professional, is only of significance if it can also be shown that there exists no inference or demonstration of impermissible manipulation of the victim by the medical professional in order to secure the sexual contact. There is a sufficient basis under the circumstances of this case to reinstate the criminal charges against the defendant given the existence of a factual issue regarding the use of force or coercion to obtain sexual gratification through the defendant's abuse of the treatment setting and the purposeful manipulation of the victim.

Reversed and remanded for the reinstatement of the charges.

1. CONSTITUTIONAL LAW — DELEGATION OF LEGISLATIVE POWERS — CRIMINAL SEXUAL CONDUCT — FORCE OR COERCION — MEDICAL TREATMENT.

A private medical organization's standards regarding what constitutes inappropriate and unethical behavior for its members that are developed for its own purposes and outside the context of the state's laws may be used as a measuring device to determine whether a defendant has engaged in inappropriate and unethical conduct in violation of a statutory prohibition of behavior medically recognized as unethical or unacceptable without violating the constitutional restriction on the delegation of legislative powers (MCL 750.520b[1][f][*iv*]).

2. CRIMINAL LAW — CRIMINAL SEXUAL CONDUCT — FORCE OR COERCION — MEDICAL TREATMENT.

A defendant may be found to have committed criminal sexual conduct by sexual penetration through the use of force or coercion

where the defendant engaged in the medical treatment or examination of the victim in a manner or for purposes that are medically recognized as unethical or unacceptable; the presence of consent by the victim is not necessarily the factual equivalent of the absence of coercion; any inquiry regarding consent must focus on the validity of such consent (MCL 750.520b[1][f][*iv*]).

*Michael A. Cox*, Attorney General, *Thomas L. Casey*, Solicitor General, *David G. Gorcyca*, Prosecuting Attorney, *Joyce F. Todd*, Chief, Appellate Division, and *Janice A. Kabodian*, Assistant Prosecuting Attorney, for the people.

*Christine A. Derdarian* and *Ronald E. Kaplovitz* for the defendant.

Before: FORT HOOD, P.J., and TALBOT and BORRELLO, JJ.

TALBOT, J. Following a preliminary examination, defendant was bound over for trial on three counts of third-degree criminal sexual conduct (CSC). MCL 750.520b(1)(f)(*iv*); MCL 750.520d(1)(b). Defendant filed a motion to dismiss the charges or quash the information, challenging the constitutionality of MCL 750.520b(1)(f)(*iv*) by asserting that it is unduly vague, overbroad, and constitutes an improper delegation of legislative authority. The trial court granted defendant's motion and dismissed the charges against defendant, ruling that MCL 750.520b(1)(f)(*iv*) violated the nondelegation provision of the state constitution. The prosecution appeals as of right. We reverse and remand for the reinstatement of the charges.

## I. FACTUAL HISTORY

Defendant is a practicing psychiatrist who provided treatment and prescribed medications for the victim

from 1999 to 2005. The victim was referred to defendant by her attorney in 1999 for a child-custody evaluation. Purportedly, the victim had lost custody of her children because of psychiatric problems. Although her initial treatment schedule was more sporadic, encompassing office appointments with defendant on three-month intervals, over time the victim was scheduled for weekly sessions with defendant.

The victim described her relationship with defendant as changing substantially in 2003, concurrent with defendant's divorce, and asserted, "It started becoming personal." Defendant began telling the victim about his wife and divorce and initiated inquiries regarding the victim's sexual relationship with her husband. While initially taken aback by the questions, the victim began to discuss with defendant problems in her marriage and the sexual difficulties she was experiencing.

The victim's relationship with defendant further evolved in late 2003 or early 2004 when she acknowledged developing "sexual feelings" for defendant. The victim confessed these feelings to defendant and defendant assured her that they comprised a normal reaction to his efforts to assist her. Defendant instructed the victim to write down her feelings and send them to him as part of her therapy. Defendant purportedly suggested to the victim that women who are sexually deprived at home tend "to go elsewhere."

The first of the charged sexual encounters between defendant and the victim occurred at his office on February 7, 2004. Billing records confirm that defendant submitted charges to the victim's insurance carrier for this date. The victim noted that she was the last patient of the day for defendant and that during this session, defendant sat next to her on the couch and they began to kiss. Defendant proceeded to loosen the vic-

tim's bra and massage her breasts. The victim then performed oral sex on defendant at his request. The victim acknowledged that she had taken a substantial amount of medication on that day. She also reported that defendant, following the sexual encounter, expressed that "it was amazing, the best he's ever had."

Following this encounter, the victim reported feeling "dirty" and began to engage in compulsive washing rituals. The victim, without identifying defendant, discussed the incident with her daughter's therapist. The victim was placed in a partial-hospitalization program, and all medications prescribed by defendant were stopped. The victim also participated in an outpatient program, but in August 2004 returned to defendant's care.

The victim asserted that her return to treatment with defendant was initiated by his phone call to her indicating that the other physicians were "peons" and implying that he was better suited to assist her because of their established relationship and his knowledge of her. Defendant refilled the victim's prescriptions. The victim informed defendant that she had recorded many of his phone conversations with her, which prompted defendant to request they meet and destroy the tapes, to which she consented.

The next charged sexual encounter occurred on September 3, 2004, and was initiated by defendant's phoning the victim and requesting that she meet him at a Comfort Inn motel. The victim reported engaging in oral and vaginal sex with defendant and that she thereafter continued to engage in sexual encounters with defendant at various motels and in defendant's office. The victim stated that she was often highly medicated during these encounters from prescriptions provided by defendant. The victim asserted that defen-

dant contended that the sexual encounters were therapeutic because "I would be less frustrated at home." The victim also reported that defendant told her that their relationship comprised more than sex, "we had something special." The next charged sexual encounter occurred at a motel on September 16, 2004. However, when the victim began to perform oral sex on defendant, he indicated that he merely wanted to hold her that day.

The victim asserted that throughout these encounters she continued to discuss her problems with defendant. She informed defendant that she was experiencing guilt because of their sexual relationship, which was manifesting itself in compulsive scratching and washing behaviors. Defendant responded by increasing the victim's dosage of Resperdal and continued her prescriptions for Lorcet, Provigil, Effexor, and Klonopin. At some point, defendant exchanged the victim's Lorcet prescription for Oxycontin. The victim testified that she was very distraught after the initiation of the sexual relationship with defendant, but when she expressed concerns regarding her symptoms defendant's response was to further increase her prescription medication.

According to the victim, defendant advised her not to confess her relationship with him to her husband or to reveal the types and amounts of medication she was prescribed. The victim acknowledged that she had feelings for defendant, but opined that her sexual encounters with him were attributable to her highly medicated condition. The victim informed defendant that she had developed suicidal ideation but asserted that defendant discouraged her from seeking hospitalization and from consulting other professionals for treatment. The victim reported that defendant offered her $50,000 to not reveal their relationship to anyone. The victim finally

terminated her contacts with defendant following her attempted suicide. The victim asserted that she terminated the relationship and that defendant "never stopped treating me. He never declined me as a patient, I stopped seeing him." At this point, the victim, on her own and in conjunction with her new therapist, contacted the authorities and disclosed defendant's behavior. Billing records from defendant to the victim's insurance company show charges for services from August 11, 2001, through May 7, 2005.

When interviewed by the police, defendant admitted having a sexual relationship with the victim and that the encounters occurred at both his office and local motels. Initially, defendant attributed his behavior to his use of Vicodin to treat a medical condition, suggesting it made him vulnerable to advances by the victim. Defendant asserted that he permitted the relationship with the victim to continue because of her threats to expose their conduct and ruin his career. During the interview, defendant also indicated that he allowed the relationship with the victim to continue in an effort to provide therapy and help her. Defendant admitted to the police his awareness of the impropriety of his conduct and pleaded that charges not be pursued, because it would result in his professional ruin.

## II. PRELIMINARY EXAMINATION AND LOWER-COURT PROCEEDINGS

At the preliminary examination, Dr. Patricia Campbell, a licensed psychiatrist and physician, testified concerning professional standards in the field of psychiatry.[1] Dr. Campbell testified that in the field of psychiatry there are professional standards on the

---

[1] The parties stipulated that Dr. Campbell was qualified as an expert in psychiatry.

national, state, and local community levels, as well as legal regulations and an ethical code. The American Psychiatric Association (APA) has adopted the American Medical Association (AMA) code of ethics with annotations pertaining to psychiatrists. The APA ethics code comprises the national ethical standard and is applicable to practitioners in Michigan.

Dr. Campbell testified that the APA ethics code expressly forbids a psychiatrist from having sexual contact with a current or former patient. Dr. Campbell indicated that the code precludes sexual encounters between a doctor and a patient because "the inherent inequality in the doctor-patient relationship may lead to exploitation of the patient, sexual activity with a current or former patient is unethical." Dr. Campbell opined that sexual activity with a current or former patient is considered unethical and unacceptable and that under no circumstances would sexual contact be considered an appropriate medical treatment for any patient. Dr. Campbell indicated that the proscription against intimate relationships constituted a "clear cut" rule. When queried regarding how a psychiatrist should respond to a patient seeking to initiate a romantic relationship with his or her therapist, Dr. Campbell responded that the psychiatrist must establish explicit boundaries and instruct the patient that a sexual relationship would be unacceptable. If the psychiatrist desired a romantic relationship with the patient, Dr. Campbell indicated that the therapist should "seek supervision or transfer the patient to another psychiatrist." Dr. Campbell added that, even in cases where the psychiatrist refers the patient elsewhere before starting the romantic relationship, some states require a certain time to have lapsed before the romantic relationship can commence in order to rebut the presumption of exploitation.

At the conclusion of the preliminary examination, defendant was bound over for trial on three counts of third-degree CSC. On September 5, 2007, defendant filed a motion to dismiss the charges or quash the information. Defendant alleged that the statutory provision under which he was charged, MCL 750.520b(1)(f)(*iv*), is unconstitutional because it is unduly vague, overbroad, and constitutes an improper delegation of legislative authority.

Defendant was prosecuted for using "force or coercion" to accomplish sexual penetration. MCL 750.520d(1)(b). MCL 750.520b(1)(f)(*iv*) defines force or coercion as including circumstances when "the actor engages in the medical treatment or examination of the victim in a manner or for purposes that are medically recognized as unethical or unacceptable." Defendant maintained that this provision is unconstitutionally vague because, unlike the other sections of the statute defining "force or coercion" with which the instant provision is grouped, it makes no reference to consent, or the use of physical dominance or threat.[2] Defendant further argued that the provision is unconstitutionally vague because it fails to provide information defining or elucidating what is considered unethical or unacceptable conduct. Defendant claimed that the statute is overbroad because it criminalizes sexual relations between consenting adults who are not incapacitated or related by blood or affinity. Finally, defendant argued that the provision unlawfully delegates to an undefined third party the legislative power to define a crime because of the failure of the statutory provision to delineate what constitutes unethical behavior or to point to any guidelines or organization for that definition.

The prosecution responded that the provision, when read in context, is not vague because it provides fair

---

[2] See MCL 750.520b(1)(f)(*i*), (*ii*), (*iii*), and (*v*).

notice of the conduct prohibited and defines what constitutes "force or coercion." Further, the prosecution alleged that defendant's professional code of ethics expressly prohibits sexual contact with a patient. Accordingly, defendant knew that his actions were unethical as demonstrated by his offering the victim money to not reveal their relationship, his destruction of incriminating audiotapes, and his admissions to the police regarding the impropriety of his behavior. The prosecution addressed the issue of consent by asserting that the victim was incapable of consenting given her mental and emotional instability and her heavily medicated condition. Finally, the prosecution maintained that the Legislature did not improperly delegate its authority because sexual contact with a patient is absolutely unethical and is expressly prohibited by the APA code of ethics and defendant was aware of the proscription against such a relationship with his patient.

After taking the matter under advisement, the trial court entered an order dismissing all charges against defendant. The trial court noted that the medical profession has recognized canons of ethics to which its members are obligated to adhere. The trial court further opined that the evidence presented at the preliminary examination demonstrated that sexual relations between a doctor and patient are always and expressly forbidden. The trial court concluded, "[i]f the statute is construed to refer to the canons of ethics adopted by the defendant's licensing agency or agencies, the statute is not void for vagueness." Nevertheless, the court determined that the statute was unconstitutional because it "delegate[ed] the content of a criminal law to a third-party in a manner that violates the nondelegation provision of the state constitution."

### III. STANDARD OF REVIEW

On appeal, the prosecution contends that the trial court erred in finding that MCL 750.520b(1)(f)(*iv*) constituted an improper delegation of legislative authority. Whether a statute is constitutional is a question of law that this Court reviews de novo. *People v Martin*, 271 Mich App 280, 328; 721 NW2d 815 (2006).

### IV. ANALYSIS

It is undisputed that defendant, while functioning as the victim's psychiatrist, engaged in a sexual relationship with his patient. Defendant was charged with violating MCL 750.520d(1)(b), which provides:

> A person is guilty of criminal sexual conduct in the third degree if the person engages in sexual penetration with another person and if any of the following circumstances exist:
>
> \*   \*   \*
>
> (b) Force or coercion is used to accomplish the sexual penetration. Force or coercion includes but is not limited to any of the circumstances listed in section 520b(1)(f)(*i*) to (*v*).

MCL 750.520b(1)(f)(*iv*) provides that "force or coercion" includes:

> When the actor engages in the medical treatment or examination of the victim in a manner or for purposes that are medically recognized as unethical or unacceptable.[3]

---

[3] The statute further indicates that "force or coercion" also includes: (*i*) when the actor overcomes the victim through the actual application of physical force or physical violence, (*ii*) when the actor coerces the victim to submit by threatening to use force or violence on the victim, and the victim believes that the actor has the present ability to execute the threats, (*iii*) when the actor coerces the victim to submit by threatening

The lower court accepted defendant's argument that MCL 750.520b(1)(f)(*iv*) allowed for an improper delegation of legislative authority because the statutory provision failed to sufficiently define the precluded conduct and permitted a third party, such as the APA, to make a determination of what constitutes prohibited behavior on the basis of that group's ascertainment of an applicable ethical code.

The Michigan Constitution prohibits the delegation of "legislative power." Const 1963, art 4, § 1. The nondelegation doctrine is recognized as encompassing a "standards" test:

> There is no doubt that a legislative body may not delegate to another its lawmaking powers. It must promulgate, not abdicate. This is not to say, however, that a subordinate body or official may not be clothed with the authority to say when the law shall operate, or as to whom, or upon what occasion, provided, however that the standards prescribed for guidance are as reasonably precise as the subject matter requires or permits. [*Associated Builders & Contractors v Dep't of Consumer & Industry Services Director (On Remand)*, 267 Mich App 386, 391; 705 NW2d 509 (2005), quoting *West Ottawa Pub Schools v Director, Dep't of Labor*, 107 Mich App 237, 243; 309 NW2d 220 (1981), quoting *Detroit v Detroit Police Officers Ass'n*, 408 Mich 410, 458; 294 NW2d 68 (1980), quoting *Osius v St Clair Shores*, 344 Mich 693, 698; 75 NW2d 25 (1956) (internal quotation marks and emphasis omitted).]

However, a "vital distinction" exists " 'between conferring the power of making what is essentially a legislative determination on private parties and adopting what private parties do in an independent and unre-

---

to retaliate in the future against the victim, or any other person, and the victim believes that the actor has the ability to execute this threat, and (*v*) when the actor, through concealment or by the element of surprise, is able to overcome the victim. MCL 750.520b(1)(f)(*i*), (*ii*), (*iii*), and (*v*).

lated enterprise.' " *Associated Builders & Contractors, supra* at 393 (citation omitted). The independent significance standard has been described as:

> "[W]here a private organization's standards have significance independent of a legislative enactment, they may be incorporated into a statutory scheme without violating constitutional restrictions on delegation of legislative powers. A private entity's standards cannot be construed as a deliberate law-making act when their development of the standards is guided by objectives unrelated to the statute in which they function." [*Taylor v Gate Pharmaceuticals,* 468 Mich 1, 12; 658 NW2d 127 (2003) (citation omitted).]

In other words, " '[c]are must be exercised in distinguishing between statutes which delegate the authority to make the standards to private parties and those which refer to outside standards as the measuring device.' " *Id.* at 13 (citation omitted).

After construing MCL 750.520b(1)(f)(*iv*), we hold that the statute refers to factual conclusions of independent significance, which function as a "measuring device" and not an improper delegation of legislative authority. The statute relies on a determination of independent significance to ascertain whether a medical treatment or examination was conducted in a manner or for a purpose that is "medically recognized as unethical or unacceptable." This finding is then used as the measure against which conduct by the medical professional will be evaluated. The APA does not determine whether criminal charges will be filed. Instead, the APA for its own purposes and outside the context of this state's laws makes factual determinations and delineates guidelines regarding what constitutes inappropriate and unethical behavior for its professional members. This is consistent with this Court's previous recognition that "medical testimony is necessary to prove that a defendant's behavior during a medical

examination was not acceptable or ethical . . . ." *People v Capriccioso,* 207 Mich App 100, 105; 523 NW2d 846 (1994), citing *People v Thangavelu,* 96 Mich App 442, 450; 292 NW2d 227 (1980). Aside from this limited factual determination, it is the Michigan Legislature that defines and delineates "the legal consequences that flow from that finding." *Taylor, supra* at 14. "By using such independent determinations as a referent, the Legislature is not delegating how that fact will be used . . . ." *Id.* Contrary to the lower court's ruling, the Legislature's deferral to and use of these private standards or findings does not run afoul of the nondelegation doctrine.

In addition, we must address defendant's assertion of alternative bases to affirm the trial court's determination that the challenged statute is unconstitutional. Defendant contends that the statute is unconstitutionally vague and overly broad because it is silent on the issue of consent.

We begin our analysis with the premise that a statute is constitutional. *Phillips v Mirac, Inc,* 470 Mich 415, 442; 685 NW2d 174 (2004) (WEAVER, J., concurring in part and dissenting in part). A statute may be found to be unconstitutionally vague on three grounds: (a) the statute fails to provide fair notice to the public of the proscribed conduct, (b) the statute gives the trier of fact unstructured and unlimited discretion to determine if an offense has been committed, and (c) the statute is overly broad and impinges on First Amendment rights. *People v Nichols,* 262 Mich App 408, 409-410; 686 NW2d 502 (2004). A statute is overbroad when it precludes or prohibits constitutionally protected conduct in addition to conduct or behavior that it may legitimately regulate. *People v McCumby,* 130 Mich App 710, 714; 344 NW2d 338 (1983).

A plain reading of the statute precludes a medical professional from abusing the setting or status of the medical relationship by using it as a pretext to have sexual contact with a patient. Merely because the statute does not definitively list all possible prohibited conduct and necessitates the use of medical testimony to discern "whether a person has intentionally touched a patient's intimate parts for an improper purpose under such pretense," which touching was unrelated to "rendering . . . treatment," does not make the statute unconstitutionally vague. *Capriccioso, supra* at 105. A statutory provision will not be found invalid on overbreadth grounds "where it has been or could be afforded a narrow and limiting construction by state courts or if the unconstitutionally overbroad part of the statute can be severed." *People v Rogers,* 249 Mich App 77, 96; 641 NW2d 595 (2001). Defendant admitted engaging in an ongoing sexual relationship with his patient. The undisputed evidence adduced at the preliminary examination clearly demonstrated that sexual contact by a medical professional in the context of treatment is both unethical and unacceptable under any factual scenario. A defendant cannot successfully challenge a statute as being unconstitutionally vague or overbroad if the conduct of the defendant clearly falls within the constitutional scope of the statute. *Id.* at 95. "Because it was undisputed that the intentional touching of a patient for the purpose of sexual arousal or gratification is considered unacceptable and unethical, we find that the statutory offense adequately notified defendant that the conduct in which he engaged was criminal." *Capriccioso, supra* at 105.

Specifically, defendant asserts that there is an important distinction between the facts underlying the existing caselaw regarding the prosecution of medical personnel for criminal sexual conduct under this statutory

provision and the circumstances of this case because this alleged victim consented and willingly participated in a sexual relationship. Defendant is correct in asserting that the rather sparse caselaw on this topic demonstrates that use of the definition of force or coercion as contained in subsection 520b(f)(*iv*) is restricted to factual situations where there exists evidence to show that the defendant used the pretext of medical necessity or treatment in order to engage in an offensive contact. Specifically, in *Capriccioso,* the defendant, an emergency-room physician, was charged with fourth-degree criminal sexual conduct pursuant to MCL 750.520e(1)(a) in conjunction with his "improper conduct during the examinations of seven female patients . . . ." *Capriccioso, supra* at 101. Female patients came to the emergency room with complaints of back pain and dizziness, bronchitis, stomach problems, and forms of allergy or sinus discomfort. The patients complained that the defendant engaged in prolonged and repetitive examinations of their breasts and, in one instance, penetrated the victim's vagina with an ungloved hand. The defendant's manner in conducting these examinations was "described as not typical of previous breast examinations" and a "medical expert opined that the . . . examinations performed by defendant were unnecessary for the patients' ailments and the manner of defendant's performance . . . was medically inappropriate and unacceptable." *Id.* at 104.

This Court addressed the issue of force or coercion within the context of the delivery of medical treatment, by stating, in relevant part:

> [T]he conduct proscribed [by subsection 520b(f)(*iv*)] is the intentional touching of a patient by a doctor for sexual gratification under the pretense that the contact is necessary in the diagnosis of the patient's ailment. The objective is to prevent a person in the medical profession from taking

> such an unconscionable advantage of the patient's vulnerability and abusing the patient's trust and unwitting permission of the touching under the belief that it is necessary. In turn, the Legislature has defined force or coercion as encompassing these situations. [*Capriccioso, supra* at 105.]

Similarly, in *People v Regts*, 219 Mich App 294; 555 NW2d 896 (1996), this Court found that the defendant, who was the victim's psychotherapist, "manipulated therapy sessions to establish a relationship that would permit his sexual advances to be accepted without protest." *Id.* at 296. More recently, in *People v Alter*, 255 Mich App 194; 659 NW2d 667 (2003), this Court again addressed "sexual relations that [the defendant] had with the victim while he was her therapist." *Id.* at 196. The defendant initiated sexual contact with his victim at hotels as part of her purported therapy. In that instance, "[t]he victim denied that she had any romantic feelings toward defendant while in therapy with him" and "denied ever giving defendant permission to have . . . sexual contact with her." *Id.* at 197, 203. This Court determined that the lack of permission from the victim comprised "sufficient evidence that defendant used actual force or an unethical or unacceptable manner of treatment to accomplish sexual contact," pursuant to MCL 750.520b(1)(f)(*i*). *Alter, supra* at 203. In the alternative, this Court recognized that "the coercion element was satisfied because defendant, as the victim's therapist, engaged in sexual contact with the victim through the use of an unethical or unacceptable manner of treatment" under the pretense of assisting the victim address problems in her marital relationship. *Id.*

Clearly, MCL 750.520b(1)(f)(*iv*) has historically been applied to situations where the pretext of medical necessity or treatment was used to secure the victim's consent to what would, outside the medical context,

comprise an offensive contact or touching. As such, the statutory provision has functioned as a means to negate any consent by the victim when a medical pretense is used. *Capriccioso, supra* at 105. In other words, the statute criminalizes a medical professional's abuse or manipulation of a patient in order to procure their concession or acquiescence to sexually intimate contact on the basis of a belief or understanding that such contact is necessary to conduct a medical examination or for treatment purposes.

Defendant contends that this case does not conform to the established standard because his relationship with the victim was consensual, thereby failing to demonstrate the statutory requirement of "force or coercion." We note at the outset that a factual question exists regarding whether the victim's sexual encounters with defendant were consensual or the result of manipulation in the context of therapy. The victim asserts that defendant discouraged her from consulting other medical professionals for treatment and continued to engage in therapy and the prescription of medication for her. And we note that at least one of the charged sexual encounters occurred in defendant's office, allegedly during a therapy session, which was billed to the victim's medical insurer.

Although defendant denies the use of any medical pretext for the sexual encounters, a factual issue exists. While the victim acknowledged having "feelings" for and a sexual attraction to the defendant, this is not dispositive of whether defendant victimized her. The victim's voluntary participation in this relationship is called into question by the inherent inequality and potential for exploitation within the doctor-patient relationship. The medical profession's code of ethics expressly provides that sexual contact between a doctor

and a patient is absolutely inappropriate, unethical, and unacceptable under any set of facts or circumstances. In addition, this victim's ability to either consent or voluntarily participate in this relationship is questionable because of her history of mental-health issues and susceptibility to manipulation through defendant's prescription of multiple medications. Defendant was well aware of the victim's condition given his prolonged history of involvement as her therapist. As such, defendant's actions are particularly egregious. Even if the victim initiated and voluntarily sought a sexual relationship, defendant had a professional duty to rebuff advances and set clear boundaries, which duty he failed miserably. Because of the alleged manipulation by defendant of his therapeutic relationship with the victim to obtain sexual contact and gratification, a factual question exists regarding the use of force or coercion as statutorily defined by MCL 750.520b(1)(f)(*iv*).

In addition, defendant misconstrues the role of consent in arguing against the criminalization of the charged behavior. Consent is not an element of the charged crime to be proven by the prosecution, and its absence from the statutory language does not render the statute unconstitutionally vague. As previously noted by this Court:

> Although the statute is silent on the defense of consent, we believe it impliedly comprehends that a willing, noncoerced act of sexual intimacy or intercourse between persons of sufficient age who are neither "mentally defective", . . . "mentally incapacitated", . . . nor "physically helpless", . . . is not criminal sexual conduct. [*People v Khan,* 80 Mich App 605, 619 n 5; 264 NW2d 360 (1978).]

Consequently, while consent can be used as a defense to negate the elements of force or coercion, *People v Waltonen,* 272 Mich App 678, 689; 728 NW2d 881

(2006), citing *People v Stull*, 127 Mich App 14, 19-21; 338 NW2d 403 (1983), this defense is not absolute.

The prosecution must prove "sexual penetration" through the use of "[f]orce or coercion." MCL 750.520d(1)(b). In this circumstance, force or coercion is demonstrated by showing that defendant "engage[d] in the medical treatment or examination of the victim in a manner or for purposes that are medically recognized as unethical or unacceptable." MCL 750.520b(1)(f)(*iv*). However, the temporal or spatial contiguity of the charged behaviors to the treatment setting is not the focus of our inquiry. As noted previously by this Court in *Capriccioso, supra* at 105, it is the manipulation of the patient within the context of a medical or treatment relationship that is determinative of the presence of force or coercion. Contrary to defendant's argument, the presence of consent is not necessarily the factual equivalent of the absence of coercion. Rather, it is a determination of the validity of that consent that is the focus of the inquiry. The fact that a victim "consented" to the touching, or even voluntarily pursued an intimate relationship with the therapist, is only of significance if it can also be shown that there exists no inference or demonstration of impermissible manipulation by the medical professional of his or her patient to secure the sexual contact. Hence, under the circumstances of this case, we conclude that there is a sufficient basis to reinstate the criminal charges against defendant given the existence of a factual issue regarding the use of force or coercion to obtain sexual gratification through defendant's abuse of the treatment setting and purposeful manipulation of the victim.

Reversed and remanded to the trial court for the reinstatement of charges against defendant. We do not retain jurisdiction.