*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
May 28, 2020

Plaintiff-Appellee,

v

No. 347086
Ottawa Circuit Court
LC No. 17-041615-FH

NICHOLAS LEE MOENCH,

Defendant-Appellant.

Before: TUKEL, P.J., and MARKEY and GADOLA, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of two counts of third-degree criminal sexual conduct (CSC-III), MCL 750.520d(1)(b) and (c). The trial court sentenced defendant to 60 to 180 months in prison for each conviction, to be served concurrently. We affirm. This appeal is being decided without oral argument pursuant to MCR 7.214(E)(1).

Defendant was convicted of sexually assaulting his estranged wife. At the time of the assaults, defendant and the victim were married, but living separately. The prosecution presented evidence that defendant lured the victim into going out with him under the pretext that he was introducing her to a friend. Defendant and the victim went to a bar where they both had several drinks. The victim, however, felt more intoxicated than normal for the amount of alcohol that she consumed. The victim testified that defendant sexually penetrated her several times that night, she did not consent, and she was physically unable to say no due to the alcohol. Several days later, after reporting the incident to the police, the victim made a call to defendant, which the police recorded. During that call, defendant admitted to several of the acts and to being aware that the victim had been physically helpless. He said that he had been trying to get the victim pregnant. Defendant testified in his own defense at trial and claimed that the victim consented to all of the acts, but had expressed regret the next morning. The jury found defendant guilty of two counts of CSC-III (finger to genital opening and penis to mouth), but not guilty of a third count of CSC-III (penis to genital opening).

-1-

## I.  AMENDMENT OF THE INFORMATION

First, defendant argues that he was denied due process and a fair trial by the late addition of charges that had previously been dismissed and that were based on perjured testimony.  We disagree.

"For an issue to be preserved for appellate review, it must be raised, addressed, and decided by the lower court."  *People v Danto*, 294 Mich App 596, 605; 822 NW2d 600 (2011) (quotation marks and citation omitted).  Defendant objected to the amendment of the information at trial.  Therefore, this issue is preserved.  Defendant, however, did not argue that the amendment was based on perjured testimony.  Therefore, this argument is unpreserved.

"The interpretation of either a statute or a court rule is a question of law subject to review de novo.  A trial court's decision to grant or deny a motion to amend an information is reviewed for an abuse of discretion."  *People v McGee*, 258 Mich App 683, 686-687; 672 NW2d 191 (2003) (citations omitted).  "An abuse of discretion occurs when the trial court chooses an outcome falling outside the range of principled outcomes."  *People v Brown*, 326 Mich App 185, 192; 926 NW2d 879 (2019) (quotation marks and citation omitted).  "A trial court also necessarily abuses its discretion when it makes an error of law."  *People v Al-Shara*, 311 Mich App 560, 566; 876 NW2d 826 (2015).

Unpreserved issues are reviewed for plain error.  *People v Cain*, 498 Mich 108, 116; 869 NW2d 829 (2015).

> To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights.  The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings.  It is the defendant rather than the Government who bears the burden of persuasion with respect to prejudice.  Finally, once a defendant satisfies these three requirements, an appellate court must exercise its discretion in deciding whether to reverse.  Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence.  [*People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999) (quotation marks, citations, and brackets omitted).]

"A 'clear or obvious' error under the second prong is one that is not 'subject to reasonable dispute.' "  *People v Randolph*, 502 Mich 1, 10; 917 NW2d 249 (2018).

### A.  BACKGROUND

At a hearing on September 14, 2018, the trial court granted defendant's motion to dismiss Counts 1, 2, and 3 of the information, which alleged CSC-III based on the theory that the victim was physically helpless.  The trial court found that the evidence at the preliminary examination did not support these counts because the victim testified that she was able to communicate "no" to

defendant. Counts 4, 5, and 6, which were based on the theory that force or coercion was used, remained for trial.

At trial, however, the victim testified that she had tried to say "no," but it was difficult to get the word out. This testimony differed from her testimony at the preliminary examination at which she testified that she actually said "no" before each sexual act. Following the victim's testimony, on the second day of trial, the prosecution moved to amend the information to allege, in the alternative, CSC-III based on the theory that the victim was physically helpless. Defendant objected to the amendment, arguing that he was only prepared to defend against the charges based on force or coercion. The trial court granted the motion to amend on the basis of the victim's testimony at trial that she was unable to say the word "no." The trial court ruled that adding the alternative counts did not interfere with defendant's defense of consent. The trial court added that defendant was not prejudiced, amendment was appropriate, and the jury would decide the facts of the case.

## B. ANALYSIS

"Both MCL 767.76 and MCR 6.112(H) authorize a trial court to amend an information before, during, or after trial." *McGee*, 258 Mich App at 686. MCR 6.112(H) provides, in relevant part:

> The court before, during, or after trial may permit the prosecutor to amend the information or the notice of intent to seek enhanced sentence unless the proposed amendment would unfairly surprise or prejudice the defendant.

Defendant argues that he was prejudiced by the amendment because he had to formulate a new defense near the end of trial. Defendant's defense at trial was that the victim consented to the sexual acts. He testified that the victim had agreed to the sexual acts and was not intoxicated, asleep, or unconscious. Defendant is correct that consent is not a defense to a charge of CSC-III based on a theory that the victim was physically helpless. See *People v Bayer*, 279 Mich App 49, 67; 756 NW2d 242 (2008), vacated in part on other grounds 482 Mich 1000 (2008), quoting *People v Khan*, 80 Mich App 605, 619 n 5; 264 NW2d 360 (1978). Nonetheless, evidence of consent is relevant to whether a victim was physically helpless.

In this case, defendant's testimony that the victim consented was relevant to the issue whether the victim was physically helpless. If the jury believed defendant's testimony that the victim consented, then it necessarily would have determined that the victim was awake and not physically helpless. Moreover, defendant testified at trial that the victim was awake and not unconscious, which served to negate the theory that the victim was physically helpless. Contrary to defendant's assertion, the trial court issued its ruling permitting the amendment *before* defendant presented his case. Regardless, defendant fails to explain what alternative defense or evidence he was unable to present because of the late addition of the physically helpless theory. Given defendant's failure to identify any unfair surprise or prejudice, the trial court did not abuse its discretion by granting the motion to amend the information during trial.

Defendant additionally argues that the trial court erred by allowing the prosecution to amend the information on the basis of perjured testimony. According to defendant, the prosecution

was aware that the victim's trial testimony that she had been unconscious was false because she had previously testified at the preliminary examination that she said "no" to defendant before each sexual act. Although the victim's testimony at trial differed from her testimony at the preliminary examination, defendant fails to establish that her testimony at trial was willfully false. See *People v Lively*, 470 Mich 248, 253; 680 NW2d 878 (2004) ("Our Legislature has . . . defined perjury as a willfully false statement regarding *any* matter or thing, if an oath is authorized or required."). The victim originally testified that she said no to each act; at trial, however, she testified that she had *tried* to say no, but the word was difficult to get out. The trial court acknowledged that the jury could use the victim's prior testimony for impeachment and could find that she was not credible because of her inconsistencies. However, the mere inconsistency in the victim's testimony does not establish that her trial testimony was perjured. Thus, the trial court did not err by allowing the alternative theories, both of which were supported by the evidence, to be presented to the jury.

## II. PROSECUTORIAL VINDICTIVENESS

Next, defendant argues that he was denied due process and a fair trial by the prosecution's vindictiveness. We disagree. A claim of prosecutorial vindictiveness presents a question of due process, which is reviewed de novo. See *People v Perry*, 317 Mich App 589, 595; 895 NW2d 216 (2016); *People v Steele*, 283 Mich App 472, 478; 769 NW2d 256 (2009).

## A. BACKGROUND

Defendant initially waived a preliminary examination and was bound over to the circuit court on four counts of CSC-III. In March 2018, the information was amended to allege three counts of CSC-III—finger to vaginal opening based on incapacitation (Count 1), penis to vaginal opening based on incapacitation (Count 2), and penis to anal opening based on force or coercion (Count 3).[1] On May 16, 2018, the parties entered a stipulation and order remanding the case to the district court for the addition of charges. Following a preliminary examination on June 26, 2018, the district court bound defendant over to the circuit court on six counts of CSC-III—finger to vaginal opening based on incapacitation (Count 1), penis to vaginal opening based on incapacitation (Count 2), penis to anal opening based on incapacitation (Count 3), finger to vaginal opening based on force or coercion (Count 4), penis to vaginal opening based on force or coercion (Count 5), and penis to mouth based on force or coercion (Count 6). On September 10, 2018, the information was amended again to change Count 3 to penis to mouth based on incapacitation. As discussed earlier, the three counts of CSC-III based on incapacitation or physical helplessness were dismissed before trial, but were reinstated during trial.

---

[1] The original November 2017 information alleged four counts: penis to vaginal opening based on force or coercion (Count 1), penis to vaginal opening based on incapacitation (Count 2), penis to anal opening based on force or coercion (Count 3), and penis to anal opening based in incapacitation (Count 4). The March 2018 amended information did not include an additional three counts; rather, it only alleged the three counts listed above.

At the hearing on September 14, 2018, defendant alleged prosecutorial vindictiveness related to the addition of charges following completion of the preliminary examination. Defendant asserted that, when he was initially bound over to the circuit court, there had been an agreement to amend the information to correct some errors. Defendant argued that the information was not properly amended in accordance with that agreement. Thereafter, the prosecution gave defendant the option to amend the information again or remand for a preliminary examination. Defendant chose to remand to the district court for a preliminary examination. According to defendant, the prosecution responded that, if the case were remanded for a preliminary examination, then it would add three additional charges.

The prosecutor argued in response that she originally had proceeded under the theory that the victim was physically helpless, but after speaking with the victim, she wanted to make sure that the jury had the option of finding that force or coercion was used even if the jury was not convinced beyond a reasonable doubt that the victim was physically helpless. The prosecutor stated that the decision to add the theory of force or coercion was based on trial strategy, not vindictiveness. The trial court found that the prosecution had wanted to charge alternative theories and had acted properly after conducting additional investigation. The trial court found that the errors in the information or the bindover by the magistrate did not rise to the level of creating prosecutorial vindictiveness.

## B. ANALYSIS

"The prosecution violates a defendant's right to due process by punishing him or her for asserting protected statutory or constitutional rights. However, the imposition of additional charges that are within the prosecution's charging discretion does not constitute sufficient evidence from which to presume vindictiveness." *Perry*, 317 Mich App at 595. "Actual vindictiveness requires objective evidence of hostility or a threat that suggests that the defendant was deliberately penalized for exercising his or her rights." *Id*. In *Perry*, this Court rejected the defendant's assertion that the timing of the prosecution's decision to seek additional charges was evidence of presumptive vindictiveness. *Id*. at 595-596.

Defendant's claim that the timing and number of additional charges establishes actual and presumed vindictiveness is without merit. Neither the timing nor the addition of charges that are within the prosecution's charging discretion constitute sufficient evidence from which to presume vindictiveness. Furthermore, as in *Perry*, there is no record evidence of actual vindictiveness on the part of the prosecution. Defendant has failed to show objective evidence of hostility or a threat suggesting that he was deliberately penalized for exercising his rights. See *Perry*, 317 Mich App at 595-596. Rather, the prosecution explained that it wanted the jury to be able to consider alternative theories, each of which were supported by the evidence. Accordingly, defendant failed to establish prosecutorial vindictiveness or that he was denied due process or a fair trial.

## III. SUFFICIENCY OF THE EVIDENCE

Defendant argues that there was insufficient evidence to support his convictions of CSC-III. We disagree.

A valid criminal conviction requires proof beyond a reasonable doubt of every element of every crime. *People v Jaffray*, 445 Mich 287, 296; 519 NW2d 108 (1994). A challenge to the sufficiency of the evidence to support a criminal conviction presents a question of law subject to review de novo. *People v Herndon*, 246 Mich App 371, 415; 633 NW2d 376 (2001). When reviewing the sufficiency of evidence in a criminal case, a reviewing court must view the evidence of record in the light most favorable to the prosecution to determine whether a rational trier of fact could find that each element of the crime was proved beyond a reasonable doubt. *Id.* A reviewing court " 'must consider not whether there was any evidence to support the conviction but whether there was sufficient evidence to justify a rational trier of fact in finding guilt beyond a reasonable doubt.' " *People v Wolfe*, 440 Mich 508, 513-514; 489 NW2d 748, amended 441 Mich 1201 (1992). Our "standard of review is deferential: a reviewing court is *required* to draw all reasonable inferences and make credibility choices in support of the jury verdict." *People v Oros*, 502 Mich 229, 239; 917 NW2d 559, 564 (2018) (citation omitted). "Conflicting evidence and disputed facts are to be resolved by the trier of fact. Minimal circumstantial evidence and reasonable inferences can sufficiently prove the defendant's state of mind, knowledge, or intent." *People v Miller*, 326 Mich App 719, 735; 929 NW2d 821 (2019).

MCL 750.520d provides, in relevant part:

(1) A person is guilty of criminal sexual conduct in the third degree if the person engages in sexual penetration with another person and if any of the following circumstances exist:

* * *

(b) Force or coercion is used to accomplish the sexual penetration. Force or coercion includes but is not limited to any of the circumstances listed in section 520b(1)(f)(*i*) to (*v*).

(c) The actor knows or has reason to know that the victim is mentally incapable, mentally incapacitated, or physically helpless.

"The third-degree criminal sexual conduct statute prohibits engaging in sexual penetration with another person under certain circumstances, including where the penetration is accomplished by force or coercion or where the actor knows the victim is physically helpless." *People v Hutner*, 209 Mich App 280, 283; 530 NW2d 174 (1995). "Force or coercion includes, but is not limited to, any of the following circumstances . . . [w]hen the actor overcomes the victim through the actual application of physical force or physical violence." MCL 750.520b(f)(1). " 'Physically helpless' means that a person is unconscious, asleep, or for any other reason is physically unable to communicate unwillingness to an act." MCL 750.520a(m).

In this case, there was sufficient evidence to support defendant's convictions of two counts of CSC-III (finger to genital opening and penis to mouth). The victim testified that, while driving home from the bar, defendant reached over the center console and put his finger in her vagina. She testified that she was half asleep and she tried to say no and move away. Defendant then stopped the car and got into the passenger's seat with the victim. After attempting to penetrate her vagina with his penis, defendant removed the victim from the car. The victim stumbled and fell on the

ground. While on the ground, defendant put his penis in her mouth. The victim again tried to say no, but had difficulty getting the word out.

The victim's testimony was sufficient to support defendant's two convictions of CSC-III under either the theory that force of coercion was used or that the victim was physically helpless. The jury could have concluded either that defendant overcame the victim through physical force, or that the victim was unconscious, asleep, or otherwise unable to communicate unwillingness to act. The victim's testimony was supported by the testimony of the sexual assault nurse examiner who opined that the victim's examination was consistent with her testimony. Furthermore, defendant's own statements during the call recorded by the police constituted evidence that the victim had not consented to the sexual acts and was physically helpless, but that defendant nonetheless engaged in the acts of sexual penetration.

Defendant argues that there was insufficient evidence that the victim was physically helpless because the victim's preliminary examination testimony was contradictory to the claim of physical helplessness. At the preliminary examination, the victim testified that she said "no" to each sexual act; at trial, however, she testified that she *tried* to say no, but that it was difficult to speak. The victim's inconsistent testimony regarding whether she was awake and actually said the word "no," or was unconscious and unable to speak, presented a question of credibility and weight for the jury to consider and resolve. Viewed in the light most favorable to the prosecution, the victim's testimony was sufficient to support defendant's convictions under this theory.

Defendant also argues that there was insufficient evidence to support his convictions under a theory of force or coercion because there was no evidence that he "seized control" over the victim. As explained by the Michigan Supreme Court in *People v Carlson*, 466 Mich 130, 140; 644 NW2d 704 (2002):

> To be sure, the "force" contemplated in MCL 750.520d(1)(b) does not mean "force" as a matter of mere physics, i.e., the physical interaction that would be inherent in an act of sexual penetration, nor, as we have observed, does it follow that the force must be so great as to overcome the complainant. It must be force to allow the accomplishment of sexual penetration when absent that force the penetration would not have occurred. In other words, the requisite "force" for a violation of MCL 750.520d(1)(b) does not encompass nonviolent physical interaction in a mechanical sense that is merely incidental to an act of sexual penetration. Rather, the prohibited "force" encompasses the use of force against a victim to either induce the victim to submit to sexual penetration or to seize control of the victim in a manner to facilitate the accomplishment of sexual penetration without regard to the victim's wishes.

In this case, the victim testified that defendant penetrated her against her will and without her permission or consent. The victim testified that she tried to say no and tried to move away. The force used by defendant was not merely incidental to an act of sexual penetration, but was sufficient to induce the victim to submit to the penetration or to seize control of the victim in a manner to facilitate the accomplishment of the sexual penetration. Although it was not necessary to show that defendant completely overcame the victim, the evidence was sufficient to establish that he did so in this case. Regardless, the victim's denial of ever giving defendant permission

was sufficient evidence that defendant acted with force. See *People v Alter*, 255 Mich App 194, 203; 659 NW2d 667 (2003) (concluding that the victim's denial of ever giving the defendant permission was sufficient evidence that the defendant used actual force). Thus, there also was sufficient evidence to support defendant's convictions under this theory.

## IV. *BRADY* VIOLATION

Defendant also argues that he was denied due process and a fair trial by the destruction of evidence favorable to the defense, and by the prosecution's refusal to allow him to examine his own cell phone, which was seized by the police. We disagree.

Defendant did not allege a violation of *Brady v Maryland*, 373 US 83; 83 S Ct 1194; 10 L Ed 2d 215 (1963), in the trial court. Thus, this issue is unpreserved. See *Danto*, 294 Mich App at 605. Defendant did request to examine his cell phone or its contents. Therefore, this issue is preserved. See *id*. Unpreserved issues are reviewed for plain error affecting a defendant's substantial rights. *Cain*, 498 Mich 108, 116. We review de novo the interpretation of a court rule, such as MCR 6.201(A)(6), the rule at issue here. *McGee*, 258 Mich App at 686.

## A. BACKGROUND

During his investigation, Detective Rick Sykes obtained a search warrant for defendant's cell phone, and the phone was turned over to Detective Kerri Cannata. Detective Cannata testified that the device would not turn on, so she performed an advanced repair. She was able to turn the phone on using parts from a working phone. Detective Cannata extracted more than 40,000 text messages from defendant's phone. The defense requested text messages from the afternoon of September 10, 2017, and Detective Cannata obtained approximately a dozen text messages from that timeframe. At trial, however, defendant testified that there were dozens, or possibly even hundreds, of text messages missing from September 10, 2017. He testified that there was an eight-hour gap in the text messages during an argument between him and the victim.

Detective Sykes also obtained video footage from the bar in November 2017. When he was unable to play the video, he tried to contact the bar, but no one responded, so he placed the video into evidence storage. In June 2018, Detective Sykes informed the prosecutor about the video. At some point, an evidence technician was able to play the video footage. The video was given to defendant after the preliminary examination in June 2018. At a hearing on August 27, 2018, the prosecutor informed defendant that all videos obtained from the bar had been turned over to the defense. On September 14, 2018, defense counsel informed the trial court that the prosecution had agreed to contact the bar for any additional videos. At trial, however, Detective Sykes testified that the bar did not save video footage after approximately 60 to 90 days.

## B. ANALYSIS

"[T]he components of a 'true *Brady* violation' are that: (1) the prosecution has suppressed evidence; (2) that is favorable to the accused; and (3) that is material." *People v Muhammad*, 326 Mich App 40, 66-67; 931 NW2d 20 (2018) (quotation marks and citation omitted). "The government is held responsible for evidence within its control, even evidence unknown to the prosecution, without regard to the prosecution's good or bad faith." *People v Chenault*, 495 Mich

142, 150; 845 NW2d 731 (2014) (citations omitted). "To establish materiality, a defendant must show that there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. (quotation marks and citation omitted). In addition, "[i]n order to warrant reversal on the claimed due process violation, a defendant must prove that the missing evidence was exculpatory or that law enforcement personnel acted in bad faith." *People v Hanks*, 276 Mich App 91, 95; 740 NW2d 530 (2007).

Defendant first argues that hundreds of text messages from his phone were lost during the repair performed by Detective Cannata in which she transferred the contents of defendant's phone to a working phone. Defendant, however, fails to establish that any text messages were, in fact, lost or destroyed when the contents of the device were transferred. Defendant provides no proof that there were additional text messages, other than his own statements and testimony to that effect. In addition, defendant fails to establish that any lost text messages would have been favorable to the defense. Defendant merely asserts that he "knew that there were text messages that were favorable," but he does not explain what the messages said or how they would have supported his defense. Defendant testified that there were missing text messages from an argument that occurred on September 10, 2017, before the incident in question. Presumably, defendant is suggesting that those messages might have been relevant to the victim's potential motive to fabricate. However, there already was evidence introduced at trial regarding the victim's prior threat that defendant would not see his children again. Similarly, defendant fails to establish that any lost text message would have been material. Again, he claims that the text messages were material to challenging the prosecution's theory, but he does not explain how they would have changed the result of the proceeding. Accordingly, defendant fails to establish a *Brady* violation with regard to the contents of his cell phone. In addition, defendant fails to establish a due-process violation because he has failed to show that the evidence was exculpatory or that the police acted in bad faith.

Defendant also argues that relevant surveillance video from the bar was destroyed because, by the time it was requested, it had been recorded over or deleted. Detective Sykes's testimony established that there was a delay in viewing the surveillance video footage and, thus, by the time it was given to defendant and additional video footage was requested, the footage had been destroyed. Even if the destruction of the additional video footage is attributed to the prosecution, defendant again fails to establish that any missing surveillance video footage would have been favorable to the defense or material to it. Defendant asserts that the video would have been useful to impeach the victim, but he does not explain how. At trial, defendant did not dispute that the victim laid her head down on the table several times. Defendant fails to explain what the additional camera angles would have shown, or how they would have been helpful to the defense. Therefore, defendant also fails to establish a *Brady* violation with regard to any surveillance video footage. Furthermore, defendant again fails to establish a due-process violation because he has failed to show that the evidence was exculpatory or that the police acted in bad faith.

Finally, defendant argues that he was denied due process by the prosecution's refusal to allow him to examine his seized cell phone. Defendant relies on MCR 6.201(A)(6), which provides that "[o]n good cause shown, the court may order that a party be given the opportunity to test without destruction any tangible physical evidence." Defendant filed a motion for discovery on August 20, 2018, in which he alleged that he had requested the return of his phone or its contents, but the prosecution refused unless defendant would consent to a search of the phone. At

the hearing on September 14, 2018, defense counsel acknowledged that a CD containing the data from the cell phone was available for him to pick up and, therefore, that issue was "covered." Defendant fails to establish a violation of MCR 6.201(A)(6) because he requested the phone *or* its contents, and he agreed that his request had been satisfied when the contents of the phone were made available. Moreover, defendant fails to explain what an examination of his cell phone would have revealed. As discussed earlier, the phone would not turn on, so the contents had to be transferred to another device. Defendant fails to establish that he would have been able to access anything on the phone before the repair performed by Detective Cannata or that such evidence would have been favorable to the defense. Furthermore, even if the prosecution violated this rule, defendant fails to establish that dismissal is the proper remedy. "When determining the appropriate remedy for discovery violations, the trial court must balance the interests of the courts, the public, and the parties in light of all the relevant circumstances, including the reasons for noncompliance." *People v Banks*, 249 Mich App 247, 252; 642 NW2d 351 (2002). Defendant fails to establish that dismissal would have been proper given the evidence that the phone would not operate before the repair, the lack of any evidence of a willful violation by the police or prosecution, and defendant's failure to show prejudice.[2]

## V. SENTENCING

Defendant argues that he is entitled to resentencing on the basis of the incorrect scoring of offense variables (abbreviated in this opinion as OV) 8 and OV 11. We disagree.

A sentencing court "must consult and consider the applicable sentencing-guidelines range, but the range is advisory only." *People v Savage*, 327 Mich App 604, 617; 935 NW2d 69 (2019). "Trial courts are afforded broad discretion in calculating sentencing guidelines, and appellate review of those calculations is very limited. Scoring decisions for which there is any evidence in support will be upheld." *People v Elliott*, 215 Mich App 259, 260; 544 NW2d 748 (1996) (citation omitted). When reviewing a trial court's scoring decision, the trial court's "factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). "A finding of fact is clearly erroneous if, after a review of the entire record, an appellate court is left with a definite and firm conviction that a mistake has been made." *People v Antwine*, 293 Mich App 192, 194; 809 NW2d 439 (2011) (citation and quotation marks omitted). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *Hardy*, 494 Mich at 438. "The sentencing Court may consider facts not admitted by the defendant or found beyond a reasonable doubt by the jury. Offense variables are properly scored by reference only to the sentencing offense except when the language of a particular offense variable statute specifically

---

[2] Defendant also briefly asserts that he was entitled to examine the bar video before trial, but he fails to elaborate on this argument. See *People v Piotrowski*, 211 Mich App 527, 530; 536 NW2d 293 (1995) (holding that "by failing to refer this Court to any authority supporting her position, [the defendant] has effectively abandoned the issue").

-10-

provides otherwise." *People v Roberts*, ___ Mich App ___, ___; ___ NW2d ___ (Docket No. 339424) (2020); slip op at 4.

"Under OV 8 of the sentencing guidelines, 15 points may be assessed if the defendant transported the victim 'to another place of greater danger or to a situation of greater danger' or if the defendant held the victim 'captive beyond the time necessary to commit the offense.' " *Chelmicki*, 305 Mich App at 70, quoting MCL 777. 38(1)(a). Defendant argues that the victim was not moved to effectuate the crime or to conceal the offense, was not moved to a place of greater danger, and was not held captive beyond the time necessary to commit the offense. The victim, however, testified that on their way home from the bar, defendant took her to a place with lots of trees. Defendant admitted that the location was a park and testified that they were not going to "have sex in an open park in front of everyone," so they parked by the dog park, which was "relatively out of the way" and could not be seen from the houses. The first sexual assault occurred inside the car while driving. Defendant then took the victim out of the car. The second assault occurred after the victim fell on the ground near a tree. The trial court did not clearly err by finding that the park was a place of greater danger. Instead of taking the victim back to his parents' house where there were people present, defendant took her to a location where it was dark and there was no one around. Thus, the trial court did not err by scoring OV 8 at 15 points.

OV 11 is scored for criminal sexual penetration and "provides that 25 points should be scored if one sexual penetration occurred." *People v Wilkens*, 267 Mich App 728, 742; 705 NW2d 728 (2005). MCL 777.41(2)(a) directs the sentencing court "[t]o score all sexual penetrations of the victim by the offender arising out of the sentencing offense." Nonetheless, and "Notably, points cannot be scored under OV 11 'for the 1 penetration that forms the basis of a first-or third-degree criminal sexual conduct offense.' " *People v Lampe*, 327 Mich App 104, 117; 933 NW2d 314 (2019), quoting MCL 777.41(2)(c). That being said, "[a]ll other sexual penetrations arising from the sentencing offense, including penetrations resulting in separate CSC-I or CSC-III convictions, are properly considered under OV 11." *Id*. at 118. In *Lampe*, this Court concluded that "three distinct acts of sexual penetration—which all occurred on the same day, at the same place, during the same course of conduct—arose out of the sentencing offense for purposes of OV 11." *Lampe*, 327 Mich App at 117-118. The Michigan Supreme Court has explained that the phrase "arising out of" suggests "a causal connection between two events of a sort that is more than incidental." *People v Johnson*, 474 Mich 96, 100-101; 712 NW2d 703 (2006).

> Something that "aris[es] out of," or springs from or results from something else, has a connective relationship, a cause and effect relationship, of more than an incidental sort with the event out of which it has arisen. For present purposes, this requires that there be such a relationship between the penetrations at issue and the sentencing offenses. [*Id*. at 101.]

In *Johnson*, the Court concluded that the two sexual penetrations did not " 'aris[e] out of' " each other because they occurred on two different dates in November 2001 and there was "no evidence that the penetrations resulted or sprang from each other[.]" *Id*. at 102.

Defendant argues that although he was convicted of two counts of CSC-III, OV 11 is not to be scored "for the 1 penetration that forms the basis of a first-or third-degree criminal sexual conduct offense," *Lampe*, 327 Mich App at 117. Here, one penetration was the basis for each of

the CSC-III offenses, resulting in a total of two distinct penetrations. Nevertheless, "[a]ll other sexual penetrations arising from the sentencing offense, including penetrations resulting in separate CSC-I or CSC-III convictions, are properly considered under OV 11." *Id.* at 118. Thus, the question for guideline purposes is whether the two counts of conviction arose from the same offense, in which case one of them would be scored, resulting in a 25-point enhancement.

The victim testified that the finger to vaginal opening penetration occurred while they were in the car and the penis to mouth penetration occurred when they got out of the car at the park. Although these two acts of sexual penetration did not occur in the exact same location, they occurred on the same day and during the same course of conduct. Further, the second penetration, which occurred outside by the tree, arose from the first penetration, which occurred in the car. After digitally penetrating the victim inside the vehicle, defendant stopped the car and moved to the passenger's seat and attempted to penetrate the victim's vagina with his penis. After he was unable to do so inside the vehicle, he took the victim out of the car and by the tree, where he penetrated her mouth with his penis. Accordingly, there was a causal connection between the two events that was more than incidental. The two acts of sexual penetration were part of one ongoing incident that occurred that evening and the second penetration sprang from the first. Therefore, the trial court did not err by scoring OV 11 at 25 points, as their causal connection means that they arose from the same course of conduct.

## VI. CUMULATIVE ERROR

Finally, defendant argues that he was denied due process by the cumulative effect of the errors in this case. We disagree. "We review this issue to determine if the combination of alleged errors denied defendant a fair trial." *People v Dobek*, 274 Mich App 58, 106; 732 NW2d 546 (2007). "The cumulative effect of several errors can constitute sufficient prejudice to warrant reversal even when any one of the errors alone would not merit reversal, but the cumulative effect of the errors must undermine the confidence in the reliability of the verdict before a new trial is granted." *Id.* However, "absent the establishment of errors, there can be no cumulative effect of errors meriting reversal." *Id*. In this case, because there are no errors, there is no cumulative effect of errors warranting reversal.

## VII. CONCLUSION

For the reasons stated, defendant's convictions and sentences are affirmed.

/s/ Jonathan Tukel
/s/ Jane E. Markey
/s/ Michael F. Gadola

-12-